UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,                         Case No. 17-CR-20595

        v.                                  Hon. Marianne O. Battani

YOUSEF MOHAMMAD RAMADAN,

                  Defendant.
_____/

## REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT

Federal agents, including the prosecutors, were aware of Yousef Ramadan's interrogation in time to preserve any recordings of the hours-long interrogation. To remedy this reckless—if not intentional—conduct by the government, this Court should craft an appropriate sanction: dismissal of the indictment or an adverse inference.

### A. *Brady* obligations extend to evidence relevant to suppression issues.

The government contends its *Brady* obligations extend only to evidence of guilt or innocence. Not so. The criminal justice system "suffers when . . . [a] prosecut[or] withholds evidence on demand of an accused which, if made available, would tend to . . . reduce the penalty." *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). Accordingly, "the suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Favorable evidence includes evidence that undermines the credibility of a testifying police officer—particularly when the credibility of the officer is at issue. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

The logic of *Brady* applies with equal force to evidence material to a suppression issue. *See, e.g., United States v. Gamez–Orduno,* 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."); *Nuckols v. Gibson*, 233 F.3d 1261, 1266–67 (10th Cir. 2000) (*Brady* violation occurs when prosecutors withhold impeachment evidence before a hearing about whether a confession was coerced); *Smith v. Black,* 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992) (due process was violated when the government did not disclose impeachment evidence before a suppression hearing); *Biles v. United States*, 101 A.3d 1012, 1019 (D.C. 2014) ("[T]he suppression of material information can violate due process under *Brady* if it affects the success of a defendant's pretrial suppression motion."). The Sixth Circuit has also implied that defendants have a right to *Brady* and *Giglio* material before a suppression hearing. *See United States v. Seymour*, 739 F.3d 923, 927 (6th Cir. 2014) (noting a defendant may have a viable *Brady* claim if he can offer reasons to believe police officers manufactured probable cause).

The outcome of a suppression hearing inevitably affects whether a defendant will be punished for his conduct at all. An order suppressing evidence may also impact plea negotiations. Thus, because evidence material at a suppression hearing may affect the defendant's punishment, the government has an obligation to disclose material and impeachment evidence before a suppression hearing.

**B. Any recordings of Mr. Ramadan's interrogation are obviously material.**

The government has already made use of Mr. Ramadan's statements during his interrogation to argue that he is involved in terrorist activity. It will surely renew this arguments at sentencing. And so, setting aside for a moment whether the recordings are relevant to the upcoming evidentiary hearing, those recordings are certainly relevant to sentencing. Mr. Ramadan's tone, demeanor, and words used may be hotly contested.

Mr. Ramadan and the government dispute critical facts about the interrogation. Whether federal agents used physical force, whether agents had to handcuff Mr. Ramadan for safety reasons; whether agents moved Mr. Ramadan from room to room—all of these are issues that will be contested at the evidentiary hearing. A video recording is the best evidence of what actually occurred. Any claim that such evidence is not material to the issues under consideration is incorrect.

**C. Federal agents knew the value of Mr. Ramadan's interrogation in time to preserve the video and audio recordings.**

Due process requires the government to preserve material exculpatory evidence. *United States v. Wright*, 260 F.3d 568, 570–74 (6th Cir. 2001) (citing *California v. Trombetta*,

3

467 U.S. 479, 485 (1984)). Material exculpatory evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488–89. "The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith." *Wright*, 260 F.3d at 571 (citing *Trombetta*, 467 U.S. at 488; *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).

The Sixth Circuit has interpreted *Trombetta* and *Youngblood* to require proof of the government's bad faith when it fails to preserve potentially exculpatory evidence. *United States v. Jobson*, 102 F.3d at 218.[1] "The presence or absence of bad faith by the [government actor] for the purposes of the Due Process Clause must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.*. "[O]nce a defendant demonstrates bad faith and that the exculpatory value of evidence was apparent before its destruction, principles that we found to be interrelated for the reason stated in *Youngblood,* he or she must also demonstrate an inability to obtain comparable evidence

---

[1] In *Wright*, Judge Gilman noted his disagreement with the *Jobson* court's reading of *Youngblood* and *Trombetta* and the requirement that a defendant prove the government acted in bad faith even after showing the unpreserved evidence was materially exculpatory. *See* 260 F.3d at 572–74 (Gilman, J., concurring). Mr. Ramadan believes Judge Gilman has the better argument, but acknowledges this Court is bound to follow the holding in *Jobson* until the Sixth Circuit en banc or the U.S. Supreme Court intervene. Nonetheless, he wishes to preserve the issue.

4

by other reasonably available means." *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001). "Potentially useful evidence . . . is 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015) (quoting *Youngblood,* 488 U.S. at 57).

The value of video footage of an interrogation is obvious. Consider the teachings of *Zaragoza-Moreira*, 780 F.3d 971 (9th Cir. 2015). The defendant was charged with importing heroin and requested video footage from the port of entry to support her duress defense. *Id.* at 976, 978. The Ninth Circuit held that the value of the video footage was readily apparent to the investigating officer before it was destroyed based, in part, on the fact that the investigating officer repeated the same question multiple times. *See id.* at 978–79. The court also found that the officer acted in bad faith when she failed to preserve the video evidence because of her acknowledged duty to collect and preserve exculpatory and inculpatory evidence; her knowledge of the existence of video footage and the write-over procedures; and her ability to request and review the video footage. *Id.* at 980. Finally, the destroyed footage was of incomparable value because neither Zaragoza's testimony nor cross-examination of border agents could confirm as accurately her behavior at the border. *Id.* at 981–82. Accordingly, the Ninth Circuit remanded the matter with instructions to dismiss the indictment. *Id.* at 982.

As in *Zaragoza*, the value of video footage of the interrogation was clear from the start. The government's warrant application is peppered with statements that seem

5

inflammatory to imply Mr. Ramadan was engaged in terrorist activity. The video recording would provide the necessary context to determine whether the agents accurately characterized his statements and sentiments. Video and audio recordings would provide further evidence about the nature of the questions asked and whether the questioning was coercive.

Moreover, the government's claim that no audio recording equipment exists at the airport or that could not request it in time to preserve it must be false. Undersigned counsel has received video and audio recordings of interrogations at the airport in other cases. Counsel will provide this recording to the Court and government counsel on January 30th. Any claim that the federal government has no ability to request and preserve video and audio recordings taken at the airport is incredible. The government also ignores its non-compliance with the standing order on discovery and instead places the blame on defense counsel.

This Court should dismiss the indictment because federal agents are aware of the video and audio recording capabilities at the airport, were aware of the evidentiary value of the recordings of Mr. Ramadan's interrogation, and yet took no steps to preserve this material evidence. Dismissal of the indictment is an appropriate sanction.

### D. This Court has inherent authority to sanction the government for its failure to comply with the standing order of discovery.

The Sixth Circuit recognizes "that the federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*,

554 F.3d 650, 651 (6th Cir. 2009) (en banc). The severity of the sanction should focus on the party's degree of fault. *Id.* at 653. "The requisite culpable state of mind may be established through a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, but even negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances." *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013). The Sixth Circuit has acknowledged that an adverse inference can be an appropriate sanction. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010). For the reasons previously outlined, as an alternative, this Court should make an adverse credibility inference when the interrogating agents testify at the evidentiary hearing on January 30th.

## CONCLUSION

Mr. Ramadan's motion should be granted.

Dated: January 26, 2018                                Respectfully Submitted,

                                                       FEDERAL DEFENDER OFFICE

                                                       s/Andrew Densemo
                                                       andrew_densemo@fd.org

                                                       s/Colleen P. Fitzharris
                                                       colleen_fitzharris@fd.org

                                                       Attorneys for Defendant
                                                       613 Abbott St., 5th Floor
                                                       Detroit, MI 48226
                                                       Phone: 313-967-5542

## CERTIFICATE OF SERVICE

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.