1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF MICHIGAN
2                SOUTHERN DIVISION
3                  —   —   —

    UNITED STATES OF AMERICA,
4
                 Plaintiff,
5
      vs.                          Case No. 17-20595
6
    YOUSEF RAMADAN,                 Hon. Marianne O. Battani
7
                 Defendant.
8   _____/

9                 EVIDENTIARY HEARING

10      BEFORE THE HONORABLE MARIANNE O. BATTANI
           United States District Judge
11     Theodore Levin United States Courthouse
           231 West Lafayette Boulevard
12              Detroit, Michigan
            Wednesday, March 7, 2018
13

14  APPEARANCES:

15  For the Plaintiff:      RONALD W. WATERSTREET
                            MICHAEL M. MARTIN
16                          U.S. Attorney's Office
                            211 W. Fort Street, Suite 2001
17                          Detroit, MI 48226
                            (313) 226-9100
18
    For the Defendant:      ANDREW DENSEMO
19                          COLLEEN P. FITZHARRIS
                            Federal Defender Office
20                          613 Abbott, 5th Floor
                            Detroit, MI 48226
21                          (313) 967-5555

22
    Also present:           Ishmal Haider, Court Interpreter
23

24
        *To obtain a copy of this official transcript, contact:*
25          *Robert L. Smith, Official Court Reporter*
            *(313) 234-2612 • rob_smith@mied.uscourts.gov*

Evidentiary Hearing • March 7, 2018

1                          TABLE OF CONTENTS

2     WITNESSES:                                        PAGE

3     (No witnesses offered)

4

5

6

7

8

9

10    EXHIBITS:                                   RECEIVED

11    (No exhibits offered)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  Detroit, Michigan
 2  Wednesday, March 7, 2018
 3  at about 9:43 a.m.
 4                    —   —   —
 5          (Court, Counsel and Defendant present.)
 6          THE LAW CLERK:  Please rise.
 7          The United States District Court for the Eastern
 8  District of Michigan is now in session, the Honorable
 9  Marianne O. Battani presiding.
10          You may be seated.
11          Calling Case No. 17-20595, United States of America
12  vs. Yousef Ramadan.  We are back on the record.
13          THE COURT:  Good morning.  Just one minute, please.
14  Okay.
15          MR. MARTIN:  Good morning.  Michael Martin and
16  Ronald Waterstreet for the government, and with us this
17  morning is our paralegal, Darlene Secord, and FBI Special
18  Agent David Banach.
19          MR. DENSEMO:  Good morning, Your Honor.
20  Andrew Densemo on behalf of Yousef Ramadan.
21          MS. FITZHARRIS:  Colleen Fitzharris also on behalf
22  of Mr. Ramadan.
23          THE COURT:  I see we do have an interpreter; is
24  that correct?
25          THE INTERPRETER:  Good morning, Your Honor.
```

1          THE COURT:  Your name, sir?

2          THE INTERPRETER:  Ishmal Haidar, H-A-I-D-A-R.

3          THE COURT:  Okay.  Would you swear him in, please.

4          THE LAW CLERK:  Do you solemnly swear that you will

5    interpret accurately and completely from the Arabic language

6    from the English language and English to Arabic using your

7    best skill and judgment?

8          THE INTERPRETER:  I do.

9          THE COURT:  All right.  Mr. Densemo --

10          MR. DENSEMO:  Yes, Your Honor.

11          THE COURT:  -- yesterday when I made a comment

12    about not asking for the interpreter and he didn't have it

13    before, my concern is that he has not had this interpreter

14    before, and my concern is that we would have to do this whole

15    hearing over again.

16          MR. DENSEMO:  No, no, Your Honor.  Let me explain,

17    for the record, why we asked that an interpreter be present

18    today.

19          Mr. Ramadan is a U.S. citizen.  He speaks English.

20    He was born in Bethlehem, Palestine.  His first language is

21    Arabic, that's the language that he spoke the majority of his

22    life.  He learned English while here in the United States --

23    well, maybe before he got to the United States.

24          Our concern was that the answers that he gave on --

25    to both direct examination and cross-examination, that they

1     would be clear and concise and that they would be the

2     exact -- that they would convey the exact meaning that he

3     intended.  Sometimes that doesn't happen with Mr. Ramadan

4     when we are speaking to him.  He has difficulty saying

5     exactly what he means.  And that's our sole purpose in asking

6     for the interpreter today is to make sure that his answers to

7     both questions on direct examination and questions on

8     cross-examination will be clearly and effectively

9     communicated to the Court.

10          Also he does speak with a heavy accent at times,

11     and that may -- that also may interfere with his ability to

12     effectively communicate, and sometimes he stutters as well.

13     So all of that, we believe that the interpreter will allow

14     for a smoother communication of his thoughts and his answers

15     to the questions that are going to be put to him.

16          THE COURT:  Do you believe though that he

17     understood fully what has been going on for these couple days

18     of hearings?

19          MR. DENSEMO:  Completely, completely, and you can

20     ask Mr. Ramadan that, Your Honor, and he will verify that he

21     has understood every word that has been said in all of the

22     proceedings that have gone forward.  We are not trying to

23     play any games with the Court and we are not trying to build

24     anything --

25          THE COURT:  I'm not suggesting at all that you were

 1    trying to play games.  I'm just suggesting that maybe now

 2    that this has come to light, we would need to redo this,

 3    that's all.

 4            MR. DENSEMO:  No, he understands English

 5    completely.  This is just for the purposes of communicating

 6    his answers effectively to the Court.

 7            THE COURT:  Okay.  Mr. Ramadan, have you understood

 8    what your attorney has said?

 9            THE DEFENDANT:  Yes, ma'am.

10            THE COURT:  And is it correct that you have been

11    able to understand everything that has been going on here?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Is there any part of it that you feel

14    you couldn't understand what a witness was saying?

15            THE DEFENDANT:  No, no, I understood everything

16    fully.

17            THE COURT:  All right.  Very good.  Thank you very

18    much.

19            MR. MARTIN:  Your Honor, may I just add to that one

20    little piece?

21            THE COURT:  Yes.

22            MR. MARTIN:  I would also like the Court to find as

23    a matter of fact that during the course of the proceedings we

24    observed, and I think the Court observed too, Mr. Ramadan

25    interacting with his attorneys, talking to his attorneys

1    about questions.  In fact, during portions of the proceedings

2    we had to take a pause because he was talking rather loudly

3    and we waited for him to finish his question.  Then, of

4    course, at the hearing on January 30th you interacted with

5    the defendant with respect to his speedy trial rights, and

6    there was no issue with communication there either.  So I

7    think those facts also supplement what Mr. Densemo is saying,

8    that he understood and was able to assist Mr. Densemo in his

9    representation.

10            THE COURT:  All right.  And I would like to ask one

11    other question.  I think I know the answer, but let me ask it

12    anyway, and that is:  Mr. Densemo, do you speak Arabic?

13            MR. DENSEMO:  No, Your Honor, I do not

14    unfortunately.

15            THE COURT:  So you have been communicating with

16    your client in English?

17            MR. DENSEMO:  Completely.  I've represented

18    Mr. Ramadan from the beginning of this case.  I have met with

19    him on more occasions than I can count.  We have never used

20    an interpreter.  He's always communicated with me in English,

21    both Ms. Fitzharris and myself.  No one is making any claims

22    whatsoever that Yousef Ramadan does not speak and understand

23    English.  Again --

24            THE COURT:  All right.

25            MR. DENSEMO:  -- so the Court is aware, this is

 1    solely for the purpose of him effectively communicating his

 2    thoughts to the Court.

 3         THE COURT:  Okay.  And, Ms. Fitzharris, is that

 4    correct, that you --

 5         MS. FITZHARRIS:  That is correct.  I have been able

 6    to speak effectively with Mr. Ramadan throughout my

 7    representation of him.

 8         THE COURT:  In English?

 9         MS. FITZHARRIS:  In English, yes.

10         THE COURT:  Okay.  All right.  The Court will take

11    note of that, that it has not had any difficulty in prior

12    communications with the defendant, and I accept the words of

13    counsel that they have been able to communicate, and as

14    indicated, we have heard that he was communicating with

15    counsel during the course of these hearings and there has not

16    been an issue.  All right.  I just want to make sure that he

17    has been given his -- I mean, his right is to understand

18    what's going on here, so --

19         MR. DENSEMO:  We appreciate that, Judge.

20         THE COURT:  Okay.  All right.  So that issue is

21    done.  We have the interpreter for today.

22         Mr. Martin, did you have something else?

23         MR. MARTIN:  I was just going to address the issue

24    of the government's witnesses, Your Honor.

25         THE COURT:  Yes.

 1          MR. MARTIN:  First off, I wanted to point out that

 2   I had an opportunity to review the transcript of the

 3   January 30th hearing, and when the government called its last

 4   witness at that hearing, the Court asked the government at

 5   that time how many more witnesses we would have, and we said

 6   three, which is the number we called yesterday.  And the

 7   Court asked Mr. Densemo how many he would have, and he said

 8   one, and you can find that discussion on pages 191 and 192 of

 9   the transcript, which means that the defense knew well in

10   advance how many witnesses were going to be called and how

11   many they had.

12          So yesterday's request for two additional

13   government witnesses to testify for the defense was a

14   surprise to us, and we were not prepared to have those

15   witnesses here.  This morning they are at a funeral -- their

16   personal schedule is they are at a funeral, and they will not

17   be done with that until 1:00 or 2:00.  That's their personal

18   schedule.

19          But when I, myself, and Mr. Waterstreet began

20   thinking about this last night, we realized this is much more

21   complicated than just the agents' personal schedule.  There

22   are a couple of things in play here that from our perspective

23   makes the request very complex.  I assume it appears easy

24   that from their perspective that you just call these

25   government witnesses and what's the big deal, but from our

1   perspective it is a big deal and here is why.

2          First, there is a set of regulations at 28 CFR

3   16-21 to 16-29, often referred to as the Touhy regulations,

4   that set forth procedures if a defendant or any party to any

5   action wants to call a witness -- a government employee as a

6   witness, specifically a Department of Justice employee, which

7   the FBI agents would be.  And that procedure requires them to

8   give us notice ahead of time so that the agency could object

9   or move to quash that subpoena if they wanted.  And that

10  process is important because it gives the agency here an

11  opportunity to weigh in.  So we would need time for that

12  process to happen.

13         But more importantly, it raises questions about

14  what our discovery obligations are with respect to government

15  agents that are called by the defense.  Does the Jencks Act

16  apply there?  Does Giglio apply?  And quite frankly, I don't

17  know the answers to those questions, and I need time to

18  research that, I need time to figure that out.

19         And if I do have discovery obligations -- or the

20  government does, then I would need time to locate that

21  information, review it and produce it.  If I do have

22  discovery obligations, which I'm not conceding that I do, but

23  if I decide that I do, then that information is not in my

24  possession, it is not readily available to me, I would need

25  time to develop that.  And I do not want to make a quick

*Evidentiary Hearing • March 7, 2018*

**11**

 1  decision on that because a wrong decision is likely to spawn
 2  additional litigation.  The defense has already filed I think
 3  at least a couple motions to dismiss the indictment for
 4  alleged discovery violations, so it's not something that I
 5  want to just kind of do by the seat of my pants, so to speak.
 6          So for those reasons I would ask the Court for two
 7  things.  Number one is we are ready to proceed with the
 8  hearing today with respect to Mr. Ramadan's testimony.  We
 9  could do that right now, we could do that this afternoon, we
10  are prepared for cross-examination, so we are ready to
11  proceed on that.  I would ask the Court for approximately two
12  weeks for us to schedule a time for the agents to be here or
13  a time for us to object to their testimony if we think that's
14  appropriate.
15          During those two weeks we can then respond to the
16  three motions that the defense filed late last week and on
17  Monday so we would then have those briefed and ready to
18  discuss at our next hearing, but I think at this point we are
19  going to need another date anyway because those agents are at
20  that funeral today, so there is no way to actually wrap
21  everything up this afternoon in any event, so that would be
22  my request.
23          My request would be at this point to proceed with
24  the testimony of Mr. Ramadan, and then give the government
25  two weeks to either object to the testimony of the witnesses

1    or agree to it and then produce any discovery if we have any

2    discovery obligations.

3            THE COURT:  All right.

4            MR. DENSEMO:  Your Honor, we don't have any

5    objections to adjourning this matter for two weeks.  I must

6    say though that I'm surprised by the argument made by the

7    U.S. Attorney.  I think the U.S. Attorney's Office frequently

8    is perturbed with me when I refer to past practices or things

9    that -- how we -- how things have gone in the past in my

10   relationship with the U.S. Attorney's Office and with

11   prosecutors during my career as a defense attorney.  And

12   typically in suppression hearings, I would simply communicate

13   with brother counsel and let them know that these are the

14   witnesses, and we know who the important witnesses are, and

15   the prosecutors would have all of those witnesses available.

16   I don't think I have ever subpoenaed a police officer to

17   testify at a suppression hearing or a trial in my life.

18   Typically, the prosecutors would have those witnesses there

19   because they are aware of their obligations to have the

20   witnesses there, and there wouldn't be any contest about a

21   police officer testifying about his arrest or an

22   interrogation of an individual.  It seemed intuitive that

23   that person needed to be there, and we all acted accordingly.

24   And that is what I thought had occurred in this case.  I

25   believe the prosecution had all of the witnesses that we

1   wanted or expected to have testify.

2          THE COURT:  Who did you anticipate the three

3   witnesses would be?

4          MR. DENSEMO:  Thomas and Brown, at the very least,

5   and Kelley.  That is who we anticipated would be testifying

6   at the -- and perhaps Schmeltz as well, but we anticipated

7   Thomas, Brown, and Schmeltz.  Kelley I hadn't really

8   anticipated, but that's who they called yesterday.

9          But Agent Thomas was the FBI agent, he was the

10  agent asking all of the questions about the terrorism and

11  firearms.

12         Brown was the CBP officer asking questions about

13  the export violations, and I think he may even have been the

14  person who handcuffed Mr. Ramadan and took control of him.

15         So clearly these were officers who were vital in

16  terms of our argument in this case or putting forth the

17  issues --

18         THE COURT:  All right.  Well, we are going to have

19  them come in.

20         MR. DENSEMO:  Okay.

21         THE COURT:  So that's all we can do at this point.

22         MR. DENSEMO:  All right.

23         THE COURT:  I will grant the adjournment, we will

24  figure out a date.  But I think we should proceed right now

25  with Mr. Ramadan.

1          MR. DENSEMO:  Your Honor, Mr. Ramadan has indicated

2  he does not want to testify until after the other witnesses.

3          THE COURT:  He doesn't have that choice.  He has to

4  testify now if he's going to testify.

5          MR. DENSEMO:  The other reason that he doesn't want

6  to testify, Your Honor, because we don't want him to testify

7  is we believe this has been -- that this -- that this chain

8  of events has been orchestrated by the government for the

9  specific purpose of putting Mr. Ramadan on the stand first so

10  that they can call Kelley, so they can call Thomas and Brown

11  as rebuttal witnesses.

12          Also we believe that if these witnesses are called,

13  they want the defense to have them on direct examination as

14  opposed to cross-examination.  I don't think that it is

15  coincidental that these witnesses were here for the first day

16  of the hearing, and now they weren't available yesterday for

17  some reason.  It just seems to be exceedingly fortuitous that

18  the government somehow believed that they weren't necessary.

19          THE COURT:  All right.  I have heard this argument

20  and I can appreciate it, but they were not subpoenaed, they

21  were not specifically asked for so --

22          MR. DENSEMO:  Well --

23          THE COURT:  -- it turned out the way it did, and

24  I'm allowing them to testify.  You may cross-examine them

25  when they are called.  And if there is some reason why your

1    client needs to take the stand to rebut what these two

2    witnesses said, I will allow that, but for now we are putting

3    his testimony on the record.  We have the interpreter.  This

4    is an evidentiary hearing, it is not a trial, and I can keep

5    track of who testified when.  So I don't see any need -- I

6    don't see any need in the law, I don't see any need in fact

7    to not proceed.

8               MR. DENSEMO:  Well, the witnesses may be able to

9    structure their testimony, Your Honor, based upon the

10   testimony of Mr. Ramadan if they hear Mr. Ramadan's testimony

11   first, and that's what we are concerned about.  Mr. Ramadan

12   should be the last person to testify in this case.  He should

13   be allowed to hear the testimony of these other witnesses

14   before they get on the -- before they take the witness stand.

15   He has been patient.  He's waited in custody for the past

16   seven months.  He has no problems waiting another seven

17   months.  He just wants to make sure that he receives the due

18   process that he is -- that he deserves, and we believe that

19   that due process requires all of the witnesses to be heard

20   before Mr. Ramadan testifies.

21               Again, Judge, we have no problems waiting.  He

22   will -- obviously he's in custody, he will remain in custody,

23   he will be available to testify immediately after the

24   witnesses have testified in this case.  There is absolutely

25   no harm to Mr. Ramadan waiting to testify after all the other

1   witnesses have testified.  But I do think that there is the

2   potential of harm if these witnesses -- if he testifies now

3   before all of the other witnesses, so I do believe that in

4   the interest of fairness these witnesses should be -- their

5   testimony should be taken, and then Yousef Ramadan should be

6   allowed to testify at the end of all of that.

7              THE COURT:  Government?

8              MR. MARTIN:  Your Honor, there is no -- the two

9   witnesses that Mr. Densemo wants to call -- we rested, we

10  have presented our witnesses.  He wants to call two

11  government witnesses who aren't in court right now and have

12  never been in court yesterday or on January 30th.  We haven't

13  had them here ever, so that's not true.  They are not here.

14  How are they going to hear Mr. Ramadan's testimony and then

15  concoct or structure their testimony in some way?  And when

16  they testify Mr. Densemo can ask them, did you hear

17  Mr. Ramadan testify?  Did you change your story based on his

18  testimony?  I mean, this alleged harm that he's coming up

19  with is just -- it is fictional.  It is no reason to delay

20  again.  So I would say let's proceed.

21             MR. DENSEMO:  Your Honor, Mr. Ramadan says that he

22  saw the officers in the court, the FBI agents and the

23  CBP Officer Brown on the first day of the hearing, he saw

24  them with his own eyes that these people were present.  And,

25  again, it would be extremely advantageous for the government

1  to hear Mr. Ramadan's testimony before they put the other

2  witnesses on.  And if, in fact, the government is saying I'm

3  calling these other witnesses, then I should have a choice as

4  to how -- what witnesses I want to put on first just as the

5  government had a choice as to what witnesses they elected to

6  put on first.  And my choice is to put the CBP officer on

7  first, the FBI officer on second, and Mr. Ramadan on last.

8  And I think that, as I indicated, in the interest of

9  fairness, that should be how we proceed in this case.  There

10  is absolutely no harm to anyone.  This is going to be

11  adjourned anyway, so we might as well make sure that there

12  are no mistakes made, Mr. Ramadan has no basis to complain

13  that something was done and he was treated unfairly if we

14  proceed in this way, and there is no basis for Mr. Ramadan to

15  complain whatsoever.  He would have received the due process

16  that he believes he's entitled to and defense believes he's

17  entitled to.  There is absolutely no harm in proceeding that

18  way, Judge.  And we would ask the Court to adjourn the

19  matter, bring the witnesses in, and we will just put

20  everybody on in that order.

21  　　　　MR. MARTIN:  Mr. Densemo has created this issue by

22  requesting at the eleventh hour two government witnesses.  We

23  are in this situation because of their strategy, not ours.

24  We rested.  We're done calling witnesses.  He now wants to

25  call witnesses.  Two of them are not available because he

| | |
|---|---|
| 1 | waited until the eleventh hour to request them.  Now we have |
| 2 | time. |
| 3 | THE COURT:  All right. |
| 4 | MR. DENSEMO:  That's not true, Judge. |
| 5 | THE COURT:  Just a minute, just a minute.  I think |
| 6 | we have had enough argument on this.  All right.  And the |
| 7 | case will have to be adjourned, but we have a whole day set |
| 8 | aside, we have our interpreter here, it's your case, and I'm |
| 9 | saying you've got to take the time, so I am going to require |
| 10 | him to testify now. |
| 11 | And you may -- when you put your witnesses on, even |
| 12 | though you are calling them, you may cross-examine them.  And |
| 13 | I'm instructing the government not to discuss with the two |
| 14 | witnesses any of the testimony that Mr. Ramadan is going to |
| 15 | give.  All right? |
| 16 | MR. MARTIN:  Yes, Your Honor. |
| 17 | MS. FITZHARRIS:  I apologize, Your Honor.  One |
| 18 | further request, maybe instruct the government not to show |
| 19 | any transcript of Mr. Ramadan's testimony. |
| 20 | THE COURT:  No, of course not.  If they are not |
| 21 | going to discuss it, they won't have the transcript. |
| 22 | MS. FITZHARRIS:  Just wanted to be clear.  Thank |
| 23 | you. |
| 24 | THE COURT:  All right.  Let's proceed. |
| 25 | MR. WATERSTREET:  Your Honor, so the record is |

```
 1    clear, I know the Court wants to move ahead right now, as
 2    does the government, but he can be advised that he does not
 3    have to take the stand, he has the Fifth Amendment right.
 4              THE COURT:  Thank you.  I will.  Once he's sworn, I
 5    will ask him.  I was just going to tell him that.
 6              (An off-the-record discussion was held at
 7              10:07 a.m.)
 8              THE COURT:  Okay.
 9              MR. DENSEMO:  Your Honor, Mr. Ramadan wants me to
10    ask the Court -- to beg the Court not to make him testify
11    because he doesn't believe that it's fair that he testifies
12    before the other witnesses have testified.  Given everything
13    that has gone on with Mr. Ramadan, both during these
14    proceedings and at the federal detention center, he has some
15    real concerns about the way that this prosecution has moved
16    forward, the way that he has been treated.  He --
17              THE COURT:  What do you mean specifically?
18              MR. DENSEMO:  Well, we are talking about the
19    government asking at the beginning of -- the discovery issues
20    that we have raised with the government; we've asked the
21    government for certain discovery and they've indicated to us
22    that they don't -- we are not entitled to certain discovery.
23    We have received redacted discovery.  We have asked the
24    government for unredacted discovery, and they haven't
25    complied with that.
```

*Evidentiary Hearing • March 7, 2018*

**20**

 1          THE COURT:  I haven't heard anything about that, so
 2    why don't we talk about it.
 3          MR. DENSEMO:  We have submitted a number --
 4    discovery -- we have -- our --
 5          MS. FITZHARRIS:  Your Honor, I can speak to this a
 6    little bit.
 7          THE COURT:  I'm sorry.
 8          MS. FITZHARRIS:  I can speak to this a little bit
 9    if you would like.
10          THE COURT:  Is there a motion, because if there are
11    outstanding motions, I have not read --
12          MS. FITZHARRIS:  There's the outstanding motion for
13    spoliation of the video of this interview.  Okay.  On Monday,
14    after reviewing the transcript and following up with the
15    government on some discovery requests, we filed some
16    additional -- we supplemented that motion with claims having
17    to do with the shredding of Officer Armentrout's notes, which
18    he indicated included Mr. Ramadan's answers to questions.
19          On January 30th the government brought up the TET
20    system, this anonymous tip from 2010.  And we had some
21    discussion on the record about how that tip was investigated,
22    and it was turned out to be false.
23          We do have a copy of the -- of what's called the
24    HSI tip form that has the narrative about that, and the last
25    three pages have significant redactions to them including one

1    whole page that is redacted.  We asked the government to

2    provide an unredacted version of this, and they asked us to

3    state the legal authority for our request.  I responded by

4    e-mail saying that I -- we believed that if that redacted

5    portion has anything to do with the investigation of

6    Mr. Ramadan in that 2010 incident, we should be entitled to

7    see it.  And that if they believe there are other reasons for

8    these redactions, that, you know, it is national security

9    concerns or any other reason, that they needed -- that it was

10   their burden to show why they are redacted.  They did not

11   respond to that request.

12          We have asked for policies having to do with

13   document retention, note retention.  We asked for them within

14   a week of the hearing and then made subsequent follow-up

15   requests having to do with very specific things that came up

16   during the January 30th meeting.

17          It wasn't until Friday, March 2nd that we received

18   final word that the government was not going to produce many

19   of the things we requested and did not believe that we had

20   any legal basis to be arguing or requesting those items.

21   So --

22          THE COURT:  So those are the items that are the

23   subject of the motion that the Court has to hear, but they

24   don't really address anything that Mr. Ramadan is going to

25   testify to.

1          MS. FITZHARRIS:  It --

2          THE COURT:  I don't assume from what you say.

3          MS. FITZHARRIS:  Sorry.  Just for the sake of

4   completeness, we also filed a motion to strike

5   Officer Robinson's testimony because it came to light during

6   his testimony that he wrote a report and wrote e-mails about

7   his interactions with Mr. Ramadan that were not disclosed to

8   the defense, and they were not disclosed to the defense in

9   time for cross-examination or after he testified.

10          So there are all of these issues, these outstanding

11   issues that have been going on, that Mr. Ramadan has been

12   dealing with where, in addition to all the things that we

13   discussed yesterday about the conduct at the detention

14   facility, which have created a lot of suspicion or suggestion

15   that there has been some gaming of the system or some hiding

16   the ball on this matter, and it has really hindered our

17   ability to prepare for a lot of things because we just have

18   not been able to access or get any documents or any records

19   to complete our -- to put on our evidence.

20          One final thing, you know, yes, we were allowed

21   access to this interrogation area.  As I said yesterday, we

22   were not able to take photographs or draw any diagrams.  We

23   were not allowed to bring an investigator.  And so we are

24   trying to do what we can to paint a picture for the Court

25   about the circumstances surrounding this questioning of

```
 1    Mr. Ramadan, who we have been met with a lot of resistance.
 2    And so that's been going on in the past month, and that
 3    provides a lot of background for why we believe that it would
 4    be -- that Mr. Ramadan would be prejudiced if he's required
 5    to go today because we still do not know whether all
 6    statements of Thomas or Brown have been disclosed to the
 7    defense, and those statements might be necessary to either
 8    refresh Mr. Ramadan's recollection or understand what exactly
 9    they are going to be trying to cross-examine him with.
10                So does Your Honor have any questions?
11                THE COURT:  No.
12                MS. FITZHARRIS:  Okay.
13                THE COURT:  Any comment by the government?
14    Anything else?
15                MR. MARTIN:  Your Honor, I would just say that the
16    discovery issues that are outstanding do not relate in any
17    way to Mr. Ramadan's proposed testimony.  He's going to be
18    testifying as to what he saw, what he did, what happened to
19    him, what was said to him, things that he has personal
20    knowledge of.
21                The tip has nothing to do with his testimony.  The
22    redactions the government may have made to that tip have
23    nothing to do with what he perceived or had personal
24    knowledge of.  That's just one example, but they are all like
25    that.  So there's no reason that the discovery disputes that
```

1    the parties have should prevent him from testifying as to

2    what he saw and did.

3           THE COURT:  I really don't see any reason why he

4    should not testify.  I mean, I agree, we have to adjourn this

5    matter anyway, but I don't --

6           MR. DENSEMO:  Your Honor --

7           THE COURT:  -- follow why you don't want --

8           MR. DENSEMO:  -- the government has at the very

9    beginning tried to put the defense in a -- tried to weaken

10   the defense's position by making -- you remember the motion

11   that they made at the very beginning of this hearing arguing

12   that it was our burden to bring forth evidence saying that

13   they had to -- they made a motion saying that it was our

14   burden.

15          The Court instructed us to -- both of us to file

16   briefing.  Only one side filed a brief regarding that burden,

17   and Ms. Fitzharris clearly showed that it was the

18   government's burden to put on the witnesses, that they had to

19   begin the process because there was no -- there was no

20   evidence that this statement was voluntary, there was no

21   Miranda waiver, there is no indication that any of the

22   Fifth Amendment rights had been complied.

23          So toward that end, the government then proceeded

24   to put on the witnesses in the traditional fashion that we

25   are all aware of.  And it struck me that there was never even

```
 1    an attempt by the government to try to buttress the
 2    position -- the false position that it had made or the false
 3    claim that it had made at the beginning --
 4              MR. MARTIN:  It was not a false claim, your Honor.
 5              MR. DENSEMO:  Excuse me.  Excuse me.
 6              MR. MARTIN:  It was not a false claim.
 7              MR. DENSEMO:  I'm talking here.
 8              MR. MARTIN:  Our burden --
 9              MR. DENSEMO:  I'm talking.
10              THE COURT:  All right.  Gentlemen --
11              MR. MARTIN:  Ms. Fitzharris agreed with our pre --
12    our burden.
13              MR. DENSEMO:  I'm talking here.
14              THE COURT:  Gentlemen, this, of course, cannot go
15    on the record --
16              MR. DENSEMO:  I understand.
17              THE COURT:  -- because you can't speak at the same
18    time.
19              MR. DENSEMO:  It suggests to me that the government
20    was aware of what it was doing.  Michael Martin and
21    Ron Waterstreet are very seasoned attorneys, and they have
22    been trying at the very beginning of this case to position
23    themselves -- to put this case in a position where the
24    defense was in a disadvantage both by trying to take the legs
25    out from -- away from the defense in terms of its strongest
```

1    position, that's cross-examination.  They tried to take

2    away --

3              THE COURT:  I'm not understanding what you are

4    saying.  What do you mean, they took away your

5    cross-examination?

6              MR. DENSEMO:  They attempted to do so by arguing,

7    Judge, that it was our burden.  The Court will recall that

8    argument, and they wanted us to put the witnesses on.  They

9    wanted us to take the witnesses on direct examination, and

10   that they be allowed to cross-examine every one.  But then

11   that argument was abandoned when Ms. Fitzharris submitted her

12   brief showing that it was clearly their burden to put the

13   witnesses on, they had to direct the witnesses, and the

14   defense retained its most effective tool, and that was

15   cross-examination.

16             So at the very beginning of this case they have

17   been trying to position themselves where they could -- where

18   they -- where they were in a position to cross-examine their

19   witnesses more effectively and also to deal with -- and to

20   make the defense deal with those witnesses less effectively.

21   This is just an extension of that saying that these witnesses

22   are unavailable.

23             THE COURT:  All right.  I've heard it.  I've heard

24   it, Mr. Densemo.  We are going to continue.  Let's go.

25             (An off-the-record discussion was held at

```
 1              10:17 a.m. between defense counsel and defendant.)
 2              MR. DENSEMO:  Your Honor, Mr. Ramadan would like to
 3  say something to the Court.
 4              THE DEFENDANT:  First of all, good morning, and
 5  thank you for taking the time.  Yeah, I would like to -- my
 6  request is to hear the witnesses first because I noticed that
 7  they are trying to, you know, work on a different strategy --
 8  to change the strategy.  The three important key witnesses
 9  were supposed to be here, and they didn't show up and they
10  didn't come.
11              THE COURT:  All right.  These arguments were made
12  by counsel, so there really is no other discussion on this
13  because the Court has ruled based on argument.
14              THE DEFENDANT:  I want to project videos and
15  pictures for me.
16              THE COURT:  You want to what?
17              THE DEFENDANT:  I want to project videotapes --
18              MR. DENSEMO:  He wants to present videotapes.
19              THE COURT:  Videotapes.
20              THE DEFENDANT:  Videotapes and pictures, okay, to
21  the Court as in evidence because we have no access to get the
22  hard drive to be brought to me to the prison.  And I have --
23  I don't have the privilege to move --
24              THE COURT:  So you are saying that you are not
25  prepared to testify?
```

1    MR. DENSEMO:  That's what he's saying, Your Honor.

2    THE DEFENDANT:  Yes.

3    MR. DENSEMO:  He asked that we -- in response to

4    the videos that were shown yesterday, Mr. Ramadan has

5    indicated that he wanted to show videos similar to the ones

6    that the government showed where he could testify showing the

7    relationship that he has had with the police officers that

8    was countered to the conduct that the government presented

9    yesterday.

10    So he has asked that we -- and I have attempted --

11    I submitted a proposed order to the Court -- unfortunately

12    your staff was unavailable -- a proposed order to take the

13    hard drive into the Midland County Jail so that Mr. Ramadan

14    could review the videos, review his hard drive and extract

15    certain information from.

16    THE COURT:  Come on up to the microphone.

17    MR. DENSEMO:  Unfortunately, Your Honor, because

18    the staff was unavailable, was ill, that motion was not acted

19    upon, and in addition, Mr. Ramadan had been moved from the

20    Midland County Jail back into the shoe at the Federal

21    Detention Center.  Ms. Fitzharris and I attempted to see him

22    I think last Thursday or so at the Federal Detention Center

23    in an order to try to prepare him for testimony, and the

24    detention center waiting room area was closed and so we

25    weren't able to meet with Mr. Ramadan.

```
 1              We attempted to meet with Mr. Ramadan -- we asked
 2   the marshals to have him moved by Monday so he would be
 3   available at the detention center, and the marshals weren't
 4   able to have him moved.
 5              So the first opportunity that we have had to meet
 6   with Mr. Ramadan in about two or three weeks was yesterday in
 7   the marshals' lockup.  And Mr. Ramadan had indicated that --
 8   already indicated that he wanted to show the Court some
 9   videos from his hard drive, we wanted to have those videos
10   extracted.  And yesterday when we saw these videos about his
11   conduct, which we were unaware the government was going to
12   present, just cemented in his mind and our mind that we
13   needed to have him go through -- have the hard drive made
14   available to him at either the detention center -- hopefully
15   at the detention center he won't be moved again, where we can
16   extract the same kind of video evidence and present that to
17   the Court in the same way that the government presented its
18   case.
19              So Mr. Ramadan is correct, Your Honor, in that we
20   are not -- he's not prepared to go forward with his testimony
21   because there's certain evidence that he wants to present
22   that he will not be able to present at this time.
23              THE DEFENDANT:  Please.
24              MR. MARTIN:  Your Honor, a couple points on this
25   issue.  This is a made up issue for delay.  If there are
```

```
1    videos that Mr. Densemo wants to play, we are going to have
2    another part of this hearing in two weeks, he can find his
3    videos and present them there.  What he's essentially saying
4    is he wasn't prepared to put Mr. Ramadan on today at all,
5    which seems a bit of a stretch considering that the hard
6    drive that these videos came from was produced in discovery
7    months ago, and why was -- why weren't they prepared to have
8    him testify today?  That seems like a made up excuse to keep
9    him off the stand today.  If there's videos that he wants to
10   play, he will have two weeks to find them, and then we can
11   play them at the adjournment.
12             THE COURT:  All right.  I don't want to hear any
13   more argument, please.  The Court will adjourn this matter.
14   I will set it for -- I want to do these motions first because
15   I don't want to have these witnesses here and have these
16   motions be an excuse to delay it.  So whatever all the
17   motions are, I would like to hear them before we set this on
18   a date other than --
19             MR. MARTIN:  In that event, Your Honor, there are
20   three outstanding --
21             THE COURT:  You haven't responded to them yet?
22             MR. MARTIN:  Right, because they just came in
23   recently.
24             THE COURT:  Right, I understand that.
25             MR. MARTIN:  And we have been in court on this
```

```
 1    hearing.  So I would ask for our 14 days to respond, and then
 2    I don't know if the defense wants some time to reply, and
 3    then have a hearing on those, and then if we want to have
 4    another date for the testimony after that.
 5              THE COURT:  Okay.  I am starting a lengthy trial so
 6    we are going to be putting this into mid-April.
 7              MS. FITZHARRIS:  I just wanted to respond and say
 8    these are non-dispositive motions, so the usual court
 9    deadline is seven days, and we would be happy to stick with
10    that schedule.
11              THE COURT:  Okay.  Let's do the motions on
12    April 18th.
13              MR. DENSEMO:  Could we do it April 13th, Your
14    Honor?
15              THE COURT:  The 18th I said.
16              MR. DENSEMO:  The 13th?
17              THE DEFENDANT:  The 13th.
18              MR. DENSEMO:  Is the 13th open?
19              THE COURT:  No, it is not.
20              MR. DENSEMO:  Okay.
21              THE COURT:  Sorry.  I'm not here on the 13th.
22    April the 18th, let's put them at 2:00.  And then --
23              MR. MARTIN:  Your Honor, that's a hearing on the
24    motions?
25              THE COURT:  That's just motion hearings.
```

1      MS. FITZHARRIS:  And to clarify, those are the two

2  discovery motions, right?

3      THE COURT:  Whatever motions are outstanding.  You

4  want to file another motion now, you can file another motion

5  now.

6      MS. FITZHARRIS:  Okay.

7      THE COURT:  Okay.  Any motions.  Any motion should

8  be filed though by, if there are other motions, I would say,

9  by the end of next week to give time for a response and -- I

10  mean a response and a reply.  Okay.  So we will do that.  All

11  motions by the end of next week.

12      And then I would like to set a date for the

13  hearing.  I want to leave some time because if it requires

14  somebody to get some discovery or something.  Okay.  The

15  hearing will be May 16th at 10:00, and if it needs to be

16  continued, it will be May 17th.

17      MR. MARTIN:  And we should have an interpreter at

18  all of these hearings?

19      THE COURT:  Absolutely, absolutely.  Thank you.

20      MR. WATERSTREET:  Your Honor, is the 17th at 10:00

21  as well --

22      THE COURT:  Yes.

23      MR. WATERSTREET:  -- if necessary?  Okay.  Thank

24  you.

25      THE DEFENDANT:  Excuse me.

1      THE COURT:  I want to indicate this is the

2  Sixth Circuit conference, which the Court is unable to

3  attend, but I should ask counsel if any of you were planning

4  on attending.

5      MS. FITZHARRIS:  I was, Your Honor, but I can --

6      THE COURT:  No, I can change it.  We will just move

7  it up.  Sorry, it's going to have to be after that.  I have

8  absolutely no dates before.  Okay.  Wednesday, May 23rd,

9  10:00, and that will be all day.  May 24th we will do it also

10  at 10:00.  There's one motion in the afternoon but we will

11  work around that one.

12      MS. FITZHARRIS:  So is that instead of the 16th and

13  17th?

14      THE COURT:  Correct.

15      MS. FITZHARRIS:  Or are we going --

16      THE COURT:  We are just moving it up a week, the

17  23rd and 24th.

18      MS. FITZHARRIS:  Thank you.

19      THE COURT:  But the motion hearing will still take

20  place on April 18th.

21      Now, for both sides, if there are any issues,

22  anything you think you want, please don't presume the other

23  side knows, put it in writing so we can deal with it.  You

24  understand?

25      MR. DENSEMO:  We will.

1    THE COURT:  Witness lists, I want to see -- I mean,

2  I want you to have it in writing if you want anybody from the

3  other side.

4    MR. DENSEMO:  All communications with the other

5  side will be in writing from this point forward.

6    THE COURT:  Okay.  Thank you very much.

7    MR. DENSEMO:  Thank you.  Mr. Ramadan thanks you as

8  well.

9    THE DEFENDANT:  Thanks so much.

10    MR. MARTIN:  Thank you, Your Honor.

11    THE COURT REPORTER:  All rise.  Court is in recess.

12    (Proceedings concluded at 10:30 a.m.)

13               —   —   —

14               CERTIFICATION

15

16    I, Robert L. Smith, Official Court Reporter of
   the United States District Court, Eastern District of

17  Michigan, do hereby certify that the foregoing pages comprise
   a full, true and correct transcript taken in the matter of

18  U.S.A. vs. Ramadan, Case No. 17-20595, on Wednesday,
   March 7, 2018.

19
                        *s/Robert L. Smith*

20                      _____
                        Robert L. Smith, CSR 5098
                        Federal Official Court Reporter

21                      United States District Court
                        Eastern District of Michigan

22

23

24  Date:  04/09/2018  ____

25  Detroit, Michigan