UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Case No. 17-20595
v.                                       Hon. Marianne O. Battani

YOUSEF MOHAMMAD RAMADAN,

        Defendant.
_____/

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL DISCOVERY

     The United States of America, by and through its undersigned counsel, files this opposition to Ramadan's motion to compel production of impeachment information (Docket No. 55). Ramadan's claims that the Due Process Clause of the United States Constitution requires the government to provide him with impeachment information for two law enforcement officers that Ramadan intends to call as defense witnesses at a suppression hearing, as well as six witnesses called by the government during earlier portions of the same suppression hearing. The Due Process Clause, however, does not require the government to produce impeachment material for witnesses in a suppression hearing. The fundamental concern of the Due

Process Clause is with the fairness of a finding of guilt or innocence at trial. Suppression hearings do not involve questions of guilt or innocence, and therefore do not involve the same due process concerns as a trial. Even if the Constitution required the disclosure of impeachment information in suppression hearings, Ramadan's motion should still be denied because the government does not have any impeachment information with respect to the six witnesses it called to testify. As to the two witnesses that Ramadan intends to call, the Due Process Clause does not require disclosure because impeaching his own witnesses is not be favorable to Ramadan.

## BACKGROUND

Ramadan is charged with illegally possessing firearms with obliterated serial numbers in a storage locker in Ann Arbor, Michigan, on or about August 23, 2017. Ramadan moved to suppress evidence seized from electronic media that was examined during a border search by Customs and Border Protection (CBP) officers at the Detroit Metropolitan Airport on August 15, 2017. Ramadan also moved to suppress statements he made to law enforcement officers at the airport. At the hearing on Ramadan's motions to suppress, which spanned two days, the government introduced testimony from six witnesses. Their testimony established that the inspection of Ramadan's electronic media was conducted pursuant to the government's boarder search authority, and Ramadan was not assaulted, beaten or

coerced into making any statements. Following the completion of the government's evidence, Ramadan (for the first time) asked to call two additional law enforcement officers as defense witnesses, Federal Bureau of Investigation Special Agent Michael Thomas and CBP Officer James Brown. Ramadan also frantically sought to delay his own testimony. As a result of the belated defense request to call government agents and Ramadan's lack of preparedness to testify, the Court adjourned the suppression hearing until May 23, 2018.

Ramadan subsequently provided the government with a subpoena for Thomas and Brown, and a summary of their proposed testimony. In that summary, Ramadan stated that he seeks to question Thomas and Brown because they took part in an interview of Ramadan at the airport and "one or more of the interviewing agents assaulted or witnessed assaults upon Mr. Ramadan . . . We seek to question both agents regarding the manner in which they questioned Mr. Ramadan and whether they saw or participated in acts which were assaultive, intimidating, threatening or coercive." Ramadan's summary also stated that he intends to ask Thomas and Brown about their knowledge of "recording devices and standard evidence retention practices and procedures."

Ramadan filed a motion seeking to compel the government to produce impeachment information for Thomas and Brown, as well as for the six witnesses called by the government during the first two days of the suppression hearing.

Ramadan claims that the Due Process Clause of the United States Constitution requires these disclosures. In fact, the Due Process Clause does not require production of impeachment information for a suppression hearing. Even if it did, Ramadan's motion should still be denied. No impeachment information exists for the six witnesses called by the government. As for the two witnesses Ramadan intends to call, impeaching his own witnesses will not be favorable for Ramadan or change the outcome of the proceedings, and is therefore not "material" in the constitutional sense.

ARGUMENT

The Fifth Amendment to the United States Constitution prohibits the government from depriving a person of "life, liberty, or property, without due process of law." Because the Due Process Clause is concerned with a deprivation of either life or liberty, its application to criminal discovery has been limited to exculpatory evidence, that is, evidence which is "material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "overriding concern" of the Due Process Clause is with "the justice of the finding of guilt." *United States v. Agurs*, 427 U.S. 97, 112 (1976). The Due Process Clause therefore only requires the government to produce in discovery evidence that might "affect[] the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985). Put simply, the right to exculpatory evidence is a "trial-related" right. *United States v. Ruiz*, 536 U.S. 622,

631 (2002). Impeachment evidence can fall within this category of constitutionally required discoverable material, but only when "the reliability of a given witness may well be determinative of *guilt or innocence*." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (emphasis added).

    I.    <u>The Due Process Clause Does Not Require Disclosure of Impeachment Evidence in a Suppression Hearing</u>

Evidence that might help a defendant in a suppression hearing does not meet the *Brady* standard of material exculpatory evidence because suppression hearings do not involve questions of guilt. As the Supreme Court has explained: "[o]f course, the resolution of a suppression motion can and often does determine the outcome of the case; this may be true of various pretrial motions," however the interests underlying a suppression hearing "do not coincide with the criminal law objective of determining guilt or innocence." *United States v. Raddatz*, 447 U.S. 667, 677-78 (1980). Simply put, a suppression hearing has "nothing whatever to do with improving the reliability of jury verdicts." *Id.* at 678; *Schneckloth v. Bustamonte*, 412 U.S. 218, 242 (1973) ("The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial.").

Therefore, "the process due" at a suppression hearing is "less demanding and elaborate than the protections accorded the defendant at the trial itself." *Raddatz*, 447 U.S. at 679. The "interests at stake" in a suppression hearing are of "lesser

5

magnitude" than those in the criminal trial. *Id.* As a result, hearsay evidence is permitted in a suppression hearing, but not in a trial. *Id.* And a confidential informant's identity does not need to be disclosed to the defense at a suppression hearing, whereas disclosure may be required for trial. *Id.*

Ramadan's suppression hearing does not involve questions of guilt or innocence, and therefore does not implicate the same due process concerns that underpin the government's discovery obligations under *Brady* and *Giglio*. At issue in Ramadan's suppression hearing is whether, during a secondary Customs inspection at the Detroit Metropolitan Airport on August 15, 2017, CBP officers were required to obtain a warrant to search his electronic media at the international border, and whether law enforcement officers coerced statements from Ramadan. Neither issue bears on whether Ramadan illegally possessed firearms in a storage locker in Ann Arbor a week later – which is the offense that he has been charged with committing.

Since *Brady* and *Giglio* were decided, the Supreme Court has consistently, and without exception, adhered to the view that the Due Process Clause only requires disclosure of evidence that impacts guilt or punishment. *Turner v. United States*, 137 S.Ct. 1885, 1888 (2017) (*Brady* applies to evidence "material to the defendant's guilt or punishment"); *Wearry v. Cain*, 136 S.Ct. 1002, 1006 (2016) (*Brady* applies to evidence that could have "affected the judgment of the jury"); *Strickler v. Greene*,

6

527 U.S. 263, 281 (1999) ("there is never a real '*Brady* violation' unless" evidence "would have produced a different verdict"); *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995) ("as we reiterated just last Term, evidence is 'material' under *Brady* . . . only where . . . had the evidence been disclosed the result of the trial would have been different").

No case illustrates this point better than *United States v. Ruiz*, 536 U.S. 622, 631 (2002). In *Ruiz*, the defendant was charged with importing marijuana into the United States. The government offered Ruiz a plea agreement that required her to "waive the right to receive impeachment information relating to any informants or other witnesses." 536 U.S. at 625. Ruiz would not agree to this provision, and the government withdrew the plea offer. *Id.* Ruiz later pleaded guilty without a plea agreement and appealed. *Id.* The Ninth Circuit vacated Ruiz's conviction on the ground that Due Process Clause required the government to disclose impeachment information to a defendant prior to trial. *Id.* at 626. The Supreme Court reversed and held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633. The Court explained that that there was "no legal authority either in this Court's past cases or in cases from other circuits" that would support the conclusion that the Due Process Clause requires pre-plea disclosure of impeachment information. *Id.* at 630. The Due Process Clause provides a defendant

7

with "the right to receive from prosecutors exculpatory impeachment material" as part of a "basic 'fair trial' guarantee." *Id.* at 628. Impeachment information "is special in relation to the *fairness of a trial*, not in respect to whether a plea is voluntary." *Id.* at 629 (emphasis in original). This is because the issues surrounding whether a plea is voluntary – that is, whether the plea was made knowingly and without any coercion, which, incidentally, are the same types of questions at issue in Ramadan's suppression hearing – have nothing to do with a defendant's guilt or innocence. *Id.* "Of course, the more information the defendant has . . . the wiser [his] decision [to plead guilty] will likely be." *Id.* But "the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* The Due Process Clause is only concerned with the "fairness of a trial." *Id.*

If "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement," as the Supreme Court held in *Ruiz*, then certainly it does not require such a disclosure at suppression hearings given that suppression hearings, if they occur at all, will always precede a plea. 536 U.S. at 633. Suppression hearings are not trials; they do not involve questions of guilt or innocence. As a result, the "trial-related rights to exculpatory and impeachment information in *Brady* and *Giglio*" do not apply to suppression hearings. *Id.* at 631.

The Sixth Circuit agrees that the due process requirements under *Brady* and *Giglio* do not apply to suppression hearings. "*Brady* and its progeny established the prosecutor's duty to disclose to the defendant exculpatory evidence, defined as material evidence that would have bearing upon the *guilt or innocence* of the defendant. This rule, derived from due process, helps ensure fair criminal trials . . . ." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (emphasis added). In contrast, suppression hearings involve "no definitive adjudication of innocence or guilt and ha[ve] no due process implications." *Id.* at 816.

The Supreme Court has been "emphatic" that the Due Process Clause, *Brady* and *Giglio* are "linked to the Constitution's guarantee of a fair trial." *United States v. Wells*, 260 F. App'x 902, 904 (6th Cir. 2008). And the Sixth Circuit has "reiterate[d]" the same "critical point," namely that a prosecutor has no constitutional duty to disclose evidence unless it bears on a defendant's "right to a fair trial." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988); *see also Snow v. Nelson*, 634 F. App'x 151, 156 (6th Cir. 2015) (*Brady* only applies to evidence that would "undermine confidence in the *verdict*") (emphasis in original)); *United States v. Uwazurike*, 580 F. App'x 440, 448 (6th Cir. 2014) (*Brady* applies only to evidence that "impacts a determination of defendant's guilt or innocence, not his ability to prepare for trial").

In short, the Due Process Clause, and hence *Brady* and *Giglio*, are not applicable to pre-trial proceedings that do not involve guilt or innocence. "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair *trial*." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (emphasis added).

    II.    <u>The Due Process Clause Does Not Require Disclosure of Impeachment Evidence for Witnesses Called by the Defendant</u>

The Due Process Clause certainly does not require disclosure of impeachment for the two *defense witnesses* Ramadan intends to call at the suppression hearing. "Neither case [*Brady* or *Giglio*] . . . gives the defense a general right to pre-trial discovery of evidence impeaching *defense* witnesses . . . ." *Presser*, 844 F.2d at 1283 (emphasis added). This is true because "[i]mpeaching the testimony of their own witness is not favorable to the defense, *see Brady*, 373 U.S. at 87, and does not raise the probability of a different verdict." *United States v. Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) (holding that *Giglio* did not apply because ATF agent "testified only on behalf of the defendants"); *see also In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 893 (D.C. Cir. 1999) ("there is a conceptual difference between the impeachment of a government witness and the impeachment of a defense witness . . . Evidence that impeaches a defense witness . . . is not generally favorable to the accused").

Here, Ramadan says he only intends to call Thomas and Brown to establish that "one or more of the interviewing agents assaulted or witnessed assaults upon Mr. Ramadan." Ramadan knows that Thomas and Brown will not offer such testimony and none of the witnesses called in the government's case – some of whom were with Thomas and Brown while in Ramadan's presence – testified to assaulting Ramadan or witnessing someone else assault Ramadan. There is simply no evidence in the record to indicate that Ramadan was assaulted, and no basis to conclude that Thomas or Brown have such evidence. But even assuming, for the sake of argument, that Thomas or Brown were to testify favorably for the defense on these topics, impeaching favorable testimony does not help the defense. Recognizing this logic, numerous courts have held that the government's *Giglio* obligation to provide impeachment material does not apply to defense witnesses. *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (*Giglio* applies "only to impeachment information relating to a government witness"); *United States v. Snell*, 676 F. App'x 144, 150 (4th Cir. 2017) ("government had no obligation under *Brady* or otherwise to . . . disclose evidence that was only relevant to the . . . potential impeachment of a defense witness"); *United States v. Embry*, 452 F. App'x 826, 830 (10th Cir. 2011) (affirming district court's ruling that "*Giglio* only applies to impeachment information relating to a government witness and is inapplicable where the government does not call the witness about whom impeachment evidence exists.");

*United States v. Rodella*, 2015 WL 711931 *42 (D. NM 2015) ("*Giglio* does not apply" to evidence that could be used to impeach defense witnesses); *United States v. Felix*, 2014 WL 5872824 *4 (N.D. CA 2014) ("several circuit courts have held that the *Giglio* obligation to disclose impeachment materials does not extend to defense witnesses"); *United States v. Mitchell*, 2009 WL 5201853 *2 (W.D. NC 2009) ("The defendant has not cited any case, nor is the Court aware of any, extending the *Giglio* rule to witnesses called by the defendant.").

Ramadan also suggests, in passing and without any developed argument or case citation, that he needs to impeach Thomas because the search warrant for Ramadan's storage locker in Ann Arbor was based on "Agent Thomas's account of the interrogation and description of Mr. Ramadan's statements." (R. 55: Def. Motion to Compel, PgID 759). However, Thomas' credibility is irrelevant for purposes of attacking the search warrant because Thomas was not the affiant to the search warrant application. "It is not enough for defendants to show that the affidavit contains false information." *United States v. Giacalone*, 853 F.2d 470, 475 (6th Cir. 1988). A defendant can only attack the warrant by making a "substantial preliminary showing" that "call[s] into question the veracity of the *affiant*." *Id.* at 476 (emphasis in original); *see also United States v. Rodriguez-Suzao*, 346 F.3d 637, 648 (6th Cir. 2003) (defendant's "attack on the veracity of the confidential informant's statements would be insufficient . . . without a substantial showing that the affiant's statements

12

were intentionally or recklessly false"); *United States v. Powell*, 2010 WL 3476080, *8 (E.D. MI 2010) (Edmunds, J.).

> III. Requiring Production of Impeachment Information When Not Required by the Law Would Cause Considerable Delay in These Proceedings, Set a Negative Precedent for Future Cases, and is Unnecessary Because Ramadan Is Already in Possession of Publicly Available Impeachment Information

Requiring the government to produce impeachment information for Ramadan's witnesses when it is not required under the law will significantly delay the continuation of the suppression hearing. Allegations regarding Thomas were the subject of a civil lawsuit brought against him in 2007, which was ultimately dismissed by this Court. *Koubriti v. Thomas*, Docket No. 07-cv-13678 (E.D. MI) (Battani, J.). Allegations against Thomas were also made in a criminal case that was filed in 2006. *United States v. Convertino*, Docket No. 06-cr-20173. Both the civil and criminal case involved allegations of misconduct by Thomas in the investigation and prosecution of the same criminal defendants. Obtaining and reviewing all the material in the government's possession regarding the prior criminal and civil cases would take a considerable amount of time and resources given that the events took place over 15 years ago, involved cases with voluminous amounts of material, and involved multiple government departments. The government should not be required to conduct such a review when the law does not require it.

13

Moreover, a ruling from this Court requiring the government to produce impeachment information for defense witnesses at a suppression hearing when it is not required under the law would set a precedent that would lead to lengthy and unnecessary litigation in future cases. Defendants will turn every suppression hearing into a mini-trial, where they will seek to call as a defense witness any government agent or police officer who was involved in the case (which is undoubtedly why Ramadan has filed a separate motion demanding a list of every government agent who was involved with Ramadan at the airport), hoping this will grant them access to impeachment information even for witnesses that the government does not call to testify. This would also compromise the adversarial system, as it would require the government to disclose impeachment information for all of the defense's witnesses, even for Ramadan himself (assuming he testifies at the suppression hearing). The defense would have a roadmap to the government's cross-examination of defense witnesses, which would amount to an unfair litigation advantage that is actually contrary to the Due Process Clause. *Bagley*, 473 U.S. at 675 (purpose of *Brady* "is not to displace the adversary system as the primary means by which truth is uncovered").

Lastly, Ramadan already possesses considerable impeachment information about Thomas from the public dockets mentioned above. *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003) ("records of public court proceedings" do not

constitute *Brady* material because they are "not wholly within the control of the prosecution"). Any additional impeachment information would be unnecessary, as it would be cumulative and not material for purposes of *Giglio*. *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013) ("where undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been . . . subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").

CONCLUSION

For the foregoing reasons, the Court should deny Ramadan's motion.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Ronald W. Waterstreet*
RONALD W. WATERSTREET
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9100
ronald.waterstreet@usdoj.gov

*s/ Michael C. Martin*
MICHAEL C. MARTIN
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
michael.c.martin@usdoj.gov

Dated: April 13, 2018

## CERTIFICATE OF SERVICE

      I hereby certify that on April 13, 2018, I filed the foregoing document on the ECF system, which will send notice to: Andrew Densemo, Federal Defender Office, 613 Abbott Street, 5th Floor, Detroit, MI 48226.

                                      *s/ Michael C. Martin*
                                      MICHAEL C. MARTIN
                                      Assistant U.S. Attorney
                                      211 W. Fort Street, Suite 2001
                                      Detroit, MI 48226
                                      (313) 226-9100
                                      michael.c.martin@usdoj.gov