1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF MICHIGAN
 2                              SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,     )
                                   )
 4   -vs-                          )    Criminal Case No.
                                   )
 5   YOUSEF RAMADAN,               )    2:17-cr-20595-MOB

 6                                 )
                Defendant.         )
 7   _____

 8                     EXCERPT OF MOTION HEARINGS
                           (FINDINGS ONLY)
 9                       BEFORE THE HONORABLE
          UNITED STATES DISTRICT JUDGE MARIANNE O. BATTANI
10                Detroit, Michigan - April 19, 2018

11
     APPEARANCES:
12
     FOR THE GOVERNMENT:     RONALD W. WATERSTREET, ESQ. and
13                           MICHAEL C. MARTIN, ESQ.
                             United States Attorney's Office
14                           211 W. Fort Street, Suite 2001
                             Detroit, Michigan 48226
15                           (313) 226-9100

16   FOR THE DEFENDANT:      ANDREW DENSEMO, ESQ. and
                             COLLEEN P. FITZHARRIS,ESQ.
17                           Federal Defender Office
                             613 Abbott Street
18                           5th Floor
                             Detroit, Michigan 48226
19                           (313) 967-5542

20


21
     REPORTED BY:            Darlene K. May, CSR, RPR, CRR, RMR
22                           231 W. Lafayette Boulevard
                             Detroit, Michigan 48226
23                           (313) 234-2605

24
     (Proceedings reported by mechanical stenography.  Transcript
25    produced by computer.)
```

3

```
 1                          TABLE OF CONTENTS
 2
 3   WITNESSES:
 4        None
 5
 6
 7
 8
 9
10   EXHIBITS:
11        None
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    Thursday, April 19, 2018

 2                    On or about 11:35 a.m.

 3                          -- --- --

 4            THE COURT:  I would think the only thing important

 5   about that is if there was some discipline or something that he

 6   had or the ultimate resolution that was negative.  Or even

 7   positive.  I guess they should know.

 8            That's all they want to know.  I'm not going to go

 9   into, as I said before, all the detail that some of us might

10   remember who were involved in that case.  That's not necessary.

11            MR. MARTIN:  Right.  I agree.

12            THE COURT:  So I wouldn't do that.  But I do think

13   that, given all of this discussion, that they should be given

14   not his FBI personnel file, but sanctions against him should be

15   turned over to them so they would know what they are.

16            MR. MARTIN:  Well, that could be a major effort to

17   uncover that.  That information may not be as readily available

18   as you would think.  And I'm kind of quite confident that I can

19   represent that to the Court.

20            And how much time the government would need to obtain

21   that information, I don't know.

22            THE COURT:  Well, I know.  I don't think it's going to

23   be that time consuming.  All you need to get them is a final

24   resolution of what happened.  He was -- I don't even remember.

25   He was fired because he failed to disclose information.  He was
```

1  fired because he lied.
2           I mean, I think that's enough.
3           MR. MARTIN:  So any kind of official discipline?
4           THE COURT:  Pardon me?
5           MR. MARTIN:  I'm sorry, Your Honor.  Any kind of
6  official discipline; is that what you're referring to?
7           THE COURT:  Yes, official discipline.  Yeah.  I don't
8  think we need to make a bigger deal out of this.
9           MS. FITZHARRIS:  You know, and findings.  You know, if
10 there was discipline or anything.  You know, there was clearly
11 an investigation and there was conduct, we would like to know
12 what the findings were.
13          MR. MARTIN:  See, that ...
14          THE COURT:  Well, that's a big grant.  I think you
15 can -- it's enough to know that he was -- I don't know what.
16 Discharged for lying.  Whatever it is.  That's all.
17          We're not going into the facts of the case.  I don't
18 think that's necessary.  Because it doesn't make any
19 difference.  If he lied in this case, you can argue he lied --
20 or if he lied in that case, he lied in this case.  Or if he
21 failed to turn over something in that case, maybe he failed to
22 turn it over in this case.  I don't know if that would be your
23 argument.
24          And I would order that you give them that information.
25          MR. MARTIN:  We will, Your Honor.  If it's something

1  that will take a long of time, we'll alert the Court.
2          THE COURT: Let me know.
3          And how about Brown?
4          MR. MARTIN: Brown, we have done a check on and we are
5  confident we met our obligations by not providing anything.
6          MS. FITZHARRIS: Meaning, Your Honor, they did not
7  find anything that would be considered *Giglio* material?
8          THE COURT: Correct.
9          MR. MARTIN: Correct.
10         THE COURT: Okay. All right. In terms of the
11 information you want on the officers who were there and their
12 agencies, this is like a witness list, which is not required in
13 our court in trial. So I don't think it would be required in a
14 suppression hearing. You did have the opportunity, I know, to
15 ask some of the officers who else was there and, therefore, you
16 have that information. And if you want to know if you -- if
17 you don't know and you want to know which agencies those
18 individuals were with, I would allow you to -- or order the
19 government to give you that information.
20         Okay. Government, do you understand what I said? If
21 she asks you, she or he, asks you for an agency that somebody
22 was in, you're to turn that over, but other than that you don't
23 have to give them any other listing.
24         MR. MARTIN: Yes, Your Honor.
25         THE COURT: And in terms of the unredacted tip report,

1  the only testimony we have had is that the whole report was not
2  seen by the officer; that he only saw the -- I think he said
3  several lines or something, information there.  There is
4  indication that this is a false -- that the report may have
5  had ...
6          I think this is what the defense is saying is may have
7  had information that it was checked out.  And it was merely
8  reported by an incompetent relative.  And if that's in the
9  report, you can look in the report.  If there is anything in
10 the pages that have been redacted regarding the mother-in-law
11 or mother, then that part should be turned over.  Not
12 addresses.  Just if the mother-in-law reported it and it was
13 found not to be relied upon
14         MR. MARTIN:  Yeah.  I have looked at it, Your Honor.
15 I can tell you there's nothing in the redacted portions that
16 are about whether the information is reliable or not or was
17 investigated or was found to be not credible.  There's nothing
18 like that in there.  I've looked at that.
19         THE COURT:  I'll take your word for it.  That's fine.
20         So I'm not going to order that turned over.
21         The training material:  The training material, the
22 Court finds does not need to be turned over because it doesn't
23 appear that the training material would have any relevance from
24 the testimony that's come in so far to the actual statement and
25 the subsequent finding of the guns.

1              The retention policies, that goes to whether the video
2    or notes were destroyed and the Court finds the government had
3    no responsibility for the video given the affidavit of the
4    Airport Authority as to who controlled the videos.
5              Nobody asked -- I understand now that Mr. Ramadan
6    asked for an audio, but nobody asked the government to preserve
7    this.  And at that point how would the government even know to
8    preserve a video with no audio because there was no allegation
9    by the officers who testified.
10             And, in fact, on the contrary, they said he wasn't
11   beaten up.  He said he was.  But it would be nice to have the
12   video for that.  But if they did not control it and it was in
13   the hands of the third-party and the retention policy is seven
14   days, the Court is not going to -- well, it's not going to
15   sanction the government.  And there is no video to turn over
16   and the Court is not going to sanction the government on
17   that.
18             Also, the notes, the officers testified about the
19   officer taking the notes and then giving them to this
20   Armentrout.
21             Well, who did the notes?
22             MR. MARTIN:  Officer Armentrout did the notes and then
23   he provided them to Schmeltz to do the report.
24             THE COURT:  Officer Schmeltz to do the report.  The
25   officer testified he incorporated them into the report and then

1  destroyed the notes.
2           The question there would be is there some policy?  I
3  think that's probably what the defense is asking for.  Is there
4  some policy that says the notes should not be destroyed?  If
5  there is such a policy or a policy on note retention, I want
6  that turned over to the defendant.
7           As to the *Giglio* information, I think we've already
8  covered all of that.  I don't think there's anything left on
9  that.
10          As to Robinson's notes, the Court has already ordered
11 that that's -- his E-mails are to be turned over and if there's
12 any existing report to be turned over -- I understand the
13 photos that were in the E-mails were part of what we saw at the
14 last hearing, but the time lines may become important to the
15 defense.  So, therefore, the E-mails are to be turned over.
16          MR. MARTIN:  We've done that already, Your Honor.
17          THE COURT:  Okay.  And the Court is not going to
18 strike Robinson's testimony so far or Armentrout's.
19          Did I miss any of these?
20          MR. MARTIN:  I think you got them all.
21          MS. FITZHARRIS:  I agree, Your Honor.
22          THE COURT:  Okay.  Is there anything else?  Any other
23 motion that we haven't covered here today?
24          Defense?
25          MS. FITZHARRIS:  No, Your Honor.

```
 1            THE COURT:  Government?
 2            MR. MARTIN:  We haven't directly addressed the
 3  government's motion in limine to limit the impeachment of
 4  Mr. Thomas once he does take the stand.  I think given the
 5  Court's ruling, we can see how it plays out during the course
 6  of the hearing.
 7            THE COURT:  I think we will see how it plays out
 8  during the course of the hearing after you turn over the
 9  information.
10            All right.  Thank you.  The hearing is set for May ...
11            MR. DENSEMO:  May 23rd, Your Honor.
12            THE COURT:  Thank you.  May 23rd.
13       (End of excerpt.)
14       (At 4:15 p.m., matter concluded.)
15                         -   -   -
16
17
18
19
20
21
22
23
24
25
```

1                    C E R T I F I C A T E

2

3       I, Darlene K. May, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.  I further certify that the transcript

6  fees and format comply with those prescribed by the Court and

7  the Judicial Conference of the United States.

8

9  April 20, 2018              /s/ Darlene K. May
   Date                        Darlene K. May, CSR, RPR, CRR, RMR
10                             Federal Official Court Reporter
                               Michigan License No. 6479
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25