UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 17-20595
    Hon. Marianne O. Battani

YOUSEF MOHAMMAD RAMADAN,

    Defendant.
_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS DUE TO OUTRAGEOUS GOVERNMENTAL CONDUCT [100]

The United States of America, by and through its undersigned counsel, files this opposition to Ramadan's Motion to Dismiss Due to Outrageous Governmental Conduct (Docket No. 100). The "outrageous government conduct" defense does not exist in the Sixth Circuit. Even if it did, the defense would not apply to Ramadan because the misconduct that he alleges never occurred. In fact, Ramadan alleged much of this misconduct in prior motions – which were denied by this Court. Ramadan attempts to overcome these deficiencies by asking the Court to dismiss the indictment pursuant to its general supervisory powers. But Ramadan's motion fails here too because he cannot meet the exacting legal standard for such a dismissal.

BACKGROUND

Ramadan's motion requests that this Court dismiss the indictment because of "outrageous government conduct" that has allegedly made "an absolute mockery of the judicial system." (R. 100: Def. Motion to Dismiss, PgID 1987). Ramadan also requests the Court hold an evidentiary hearing so that Ramadan can cross-examine the prosecutors, law enforcement officers and the government's paralegal regarding the alleged "outrageous government conduct." (*Id.* at PgID 1978). In support of his motion, Ramadan claims that the government engaged in three forms of "outrageous government conduct." The first allegation is that the government engaged in various discovery violations – which Ramadan acknowledges have been the subject of prior motions filed by the defense. (*Id.* at PgID 1979-80). What Ramadan fails to mention is that all of his prior discovery motions have been denied by this Court, with limited exceptions.[1] (R. 82: Order Regarding Various Pending Motions, PgID 1637-39). The

---

[1] Those exceptions did not involve any finding by the Court that the government had, in fact, committed a discovery violation, let alone discovery violations so egregious as to justify dismissal of the indictment. For example, Ramadan sought impeachment information for a law enforcement officer called as a defense witness at a suppression hearing. Although the defense was not entitled to this information under *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Court nevertheless ruled: "I am going to order it turned over, although, again, my understanding of *Giglio* is it does not need to be done at this point, but there does not seem to be any reason not to do it to clarify this matter and so that we may proceed." (R. 80: Transcript of Hearing on May 23, 2018, PgID 1297).

litany of alleged discovery violations by the government have simply not occurred, and Ramadan's repeated claims to the contrary do not make them any more real.

Perhaps recognizing that prior discredited claims of discovery violations are not a strong basis upon which to advance yet another attempt to dismiss the indictment, Ramadan makes new allegations of government misconduct, namely that: (1) the government intentionally presented false testimony during the suppression hearing and before the grand jury, (2) the government "engaged in abusive physical attacks on Mr. Ramadan," and (3) Immigration and Customs Enforcement (ICE) officers violated "agency policy and procedure" when they conducted an inspection of Ramadan's electronic devices. (R. 100: Def. Motion to Dismiss, PgID 1980-82).

As with the alleged discovery violations, these claims are also untrue. In order for the Court to conclude that the government engaged in perjury and physical abuse, it would have to fully credit Ramadan's version of events and discount all of the evidence presented by the government to the contrary. For example, six different law enforcement officers – including two called by Ramadan – testified at the suppression hearing that Ramadan was not assaulted. (R.41: Armentrout Testimony, PgID 531, Robinson Testimony, PgID 617; R. 61: Schmeltz Testimony, PgID 885, 887, Kelly Testimony, PgID 944; R. 80: Thomas Testimony, PgID 1347-48; Brown Testimony, PgID 1407-08, 1414). Only Ramadan testified that an assault occurred,

and his credibility is highly suspect given his criminal history (lying in order to fraudulently obtain Social Security benefits), his self-admitted memory problems, his history of making false statements, his lack of any physical evidence corroborating the abuse, and his self-serving incentive to fabricate. (R. 81: Ramadan Testimony, PgID 1540, 1567, 1569). Moreover, Ramadan's allegations regarding perjury before the grand jury have no factual basis in the record. Ramadan does not know who testified before the grand jury, let alone what was said. Lastly, Ramadan's claim that ICE officers violated agency policy by examining his electronic devices is false. The ICE policy cited by the defense applies to searching devices that contain attorney-client privileged material. None of Ramadan's electronic devices contained attorney-client material; and Ramadan's request for immunity from prosecution – which was made directly to law enforcement officers during his interview in secondary inspection – does not equate to an attorney-client communication.

Aside from lacking factual merit, Ramadan's current motion faces a more fundamental defect: the "outrageous government conduct" defense does not exist in the Sixth Circuit, and even if it did, Ramadan could not meet its high bar. Nor does the law entitle Ramadan to dismissal under the Court's general supervisory powers. Those powers can only be applied in limited circumstances not present here. In short, Ramadan's motion fails as both a matter of law and fact, and should therefore be denied.

ARGUMENT

I. The Outrageous Government Conduct Defense Does Not Exist

The so-called "outrageous government conduct" defense spawned 45 years ago after the Supreme Court stated in dicta that "some day" it "may" be presented with a situation where government conduct was "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). In the 45 years since *Russell* was decided, the Supreme Court has never recognized the defense, nor has it ever affirmed the dismissal of a case based on alleged "outrageous government conduct." In fact, the "maybe someday" dicta in *Russell* was subsequently "recanted by its author based upon reasoning later adopted by a majority of the Court." *United States v. Tucker*, 28 F.3d 1420, 1426 (6th Cir. 1994). The Sixth Circuit has "soundly rejected" the "outrageous government conduct" defense. *United States v. Amawi*, 695 F.3d 457, 482-84 (6th Cir. 2012); *United States v. Al-Cholan*, 610 F.3d 945, 952 (6th Cir. 2010) ("In this circuit, we have never applied the 'outrageous government conduct' defense, and have stated that there are . . . strong reasons for concluding that such a defense simply does not exist"); *United States v. Miller*, 696 F. App'x 696, 699 (6th Cir. 2017) ("the Sixth Circuit has not adopted the outrageous government conduct defense").

Even in those circuits where the defense does exist, it is "hanging by a thread." *United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998). These circuits recognize "the doctrine's potential viability," but "have yet to find a single case where the defense applies. One might call this the never say never camp – or at least the don't-say-never-if-you-don't-have-to-camp." *United States v. Dyke*, 718 F.3d 1282, 1287 (10th Cir. 2013). In circuits that (at least theoretically) recognize the defense, its application has been rejected "with almost monotonous regularity." *United States v. Voigt,* 89 F.3d 1050, 1065 (3d Cir. 1996) (*quoting United States v. Santana,* 6 F.3d 1, 4 (1st Cir.1993) ("The banner of outrageous misconduct is often raised but seldom saluted.")). This is because "the level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993) (the defense is reserved for a "narrow band of the most intolerable government conduct"). Government conduct worse than what is alleged by Ramadan has not resulted in a dismissal of an indictment. *United States v. Guzman*, 282 F.3d 56, 58 (1st Cir. 2002) (no outrageous government conduct when arresting officers forced defendant to "kneel, barefooted, on a cement floor, with his handcuffed hands over his head, for more than one hour"). And most circuits limit the defense to situations involving entrapment or government inducement of the charged crime – neither of which exist in Ramadan's case. *Dyke*, 718 F.3d at 1288; *United States v.*

6

*Boone*, 437 F.3d 829, 842 (8th Cir. 2006) (outrageous government conduct defense applies "almost exclusively to situations involving entrapment").

In short, the outrageous government conduct defense does not exist in the Sixth Circuit, and even if it did, it would not apply to Ramadan's alleged examples of government misconduct.

    II.    Ramadan Has Failed to Meet the Requirements for Dismissal Under the Court's Supervisory Powers

Ramadan's motion and brief discuss none of the case law cited above. Ramadan never mentions that the entire legal basis for his motion simply does not exist in this Circuit. Instead, he asks this Court to use its "supervisory powers" to dismiss the indictment. The Sixth Circuit has "admonished lower courts to . . . exercise their supervisory powers sparingly." *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1987). As a consequence, a defendant must meet two strict requirements before a court can use its supervisory powers to dismiss an indictment: a defendant must demonstrate that prosecutorial misconduct is a "long-standing or common problem" in the judicial district, and that the defendant was "prejudiced by the prosecutor's actions." *United States v. Griffith*, 756, F.2d 1244, 1249 (6th Cir. 1985). Ramadan does not even allege, let alone provide any proof, that the supposed misconduct he cites is a long-standing problem in the Eastern District of Michigan. *United States v. Goldsby*, 125 F. App'x 687, 691 (6th Cir. 2005) (affirming denial of defendant's motion to dismiss indictment under court's supervisory powers

7

because defendant had "not proven or even alleged" a pattern of prosecutorial misconduct). Nor does he explain in any detail how he was prejudiced. Simply alleging misconduct does not automatically equate to prejudice. For example, much of Ramadan's motion is spent complaining that law enforcement officers committed perjury in the grand jury on such topics as who handcuffed Ramadan at the airport, how many times he was handcuffed, when the handcuffs were removed, what was said to Ramadan's sister at the airport, and whether Ramadan was assaulted. (R. 100: Def. Motion, PgID 1988-89). Putting aside that Ramadan has no knowledge of whether these issues were addressed in the grand jury, none of these topics have anything to do with whether Ramadan illegally possessed firearms in a storage locker in Ann Arbor a week after the events at the airport – which is the subject of the grand jury's indictment. Therefore, even if Ramadan's allegations are true (which the government does not concede), he cannot show prejudice because the topics of the alleged perjury are "immaterial to the grand jury's determination that there was probable cause to believe that the defendant[] had committed a crime." *United States v. Nembhard*, 676 F.2d 193, 200 (6th Cir. 1982).

CONCLUSION

For the foregoing reasons, the Court should deny Ramadan's Motion to Dismiss Due to Outrageous Governmental Conduct.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Ronald W. Waterstreet*
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9100
ronald.waterstreet@usdoj.gov

*s/ Michael C. Martin*
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
michael.c.martin@usdoj.gov

*s/ Hank Moon*
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
hank.moon@usdoj.gov

Dated: September 10, 2018

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 10, 2018, I filed the foregoing document on the ECF system, which will send notice to: Andrew Densemo, Federal Defender Office, 613 Abbott Street, 5th Floor, Detroit, MI 48226.

                                      *s/ Michael C. Martin*
                                      MICHAEL C. MARTIN
                                      Assistant U.S. Attorney
                                      211 W. Fort Street, Suite 2001
                                      Detroit, MI 48226
                                      (313) 226-9100
                                      michael.c.martin@usdoj.gov