UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

v.

Yousef Mohammad Ramadan,

       Defendant.

Case No: 17-20595

Hon. Marianne O. Battani

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS (Doc. # 129)**

In February 2019, defendant Yousef Ramadan, through his counsel, requested that the United States provide photographs taken of two apartments in which Ramadan formerly lived (the government previously provided a report documenting the taking of these pictures). The government immediately complied with Ramadan's request. These pictures were taken four months after the Complaint in this case in two locations miles away from Ramadan's storage unit where officers found the weapons that form the basis of the charges in this case.

These pictures are not discoverable under Rule 16, the Court's or the district's Discovery Orders, or the government's *Brady* obligations—

1

but the United States nonetheless provided them immediately upon the defendant's request, and more than three months prior to trial.

Defense counsel now claims a discovery violation and asks this Court to impose the harshest of penalties: dismissal of the indictment. Yet defense counsel neither attempted to show that these photographs are material to his defense nor provided any authority or support for their claim that the government failed to comply with its discovery obligations.

For the reasons stated in the attached brief, the Court should deny Ramadan's baseless motion.

Respectfully submitted,

Matthew Schneider
United States Attorney

*s/Benjamin Coats*
Benjamin Coats
Hank Moon
Assistant U.S. Attorneys
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9734
Benjamin.Coats@usdoj.gov

April 15, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.

Yousef Mohammad Ramadan,

      Defendant.

Case No: 17-20595

Hon. Marianne O. Battani

**GOVERNMENT'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS (Doc. # 129)**

In February 2019, Ramadan asked for and immediately received photographs of two apartments that he had once lived in, taken after he was no longer living there (these photographs were taken in December 2017—*four months after* the Complaint in this case). Ramadan does not even attempt to argue that these pictures are somehow material to his guilt or innocence of the charges against him, which involve firearms and a silencer found in an entirely different place (a storage unit located 4.8 and 7.9 miles away from the apartments).

Instead, Ramadan says those photos would have been useful in his bond hearing and that he "languishes in federal custody due in large

3

part to the government's recalcitrance in providing court ordered discovery." [R. 129 at 7]. But Ramadan filed a new bond motion [R. 124] several weeks *after* receiving these photographs and the Court held a second bond hearing one week later: Ramadan never mentioned the photographs. He did not bother to even mention the photographs in either his written brief or at the hearing, despite being asked specifically what new information he could provide the Court as to why he should be released. And no part of this Court's first or second bond denials is undermined by these photographs.

Despite all of this, Ramadan now asks this Court to impose the most extreme remedy—dismissal of the case—for an alleged discovery violation that (1) is not a violation of Rule 16 or an order of this Court; (2) does not involve any exculpatory information but does involve information already known to the defendant; (3) was provided as soon as defense counsel requested the information; (4) was not intentional or in bad faith; (5) did not prejudice the defendant; and (5) if it needed to be cured, could be addressed with a less severe course of action.

### *Facts*

Ramadan is charged with illegal possession of firearms and a silencer based on a search of a storage unit on August 23, 2017. At some point before that date, he lived in two apartments in Ypsilanti. Ramadan fired a gun from the window of one or both of these apartments on at least two occasions. On December 14, 2017, an investigator visited the two apartments that Ramadan previously lived in and took photographs. At least as early as December 2018, Ramadan knew those photographs had been taken, since it was documented in an FBI report that was turned over to him by undersigned counsel at that point (if the FBI report had not been disclosed earlier). On February 19, 2019, Ramadan asked (through counsel) for a copy of the photographs described in that report. The government agreed, and they were hand-delivered to his counsel on February 21: two days after the request.

### *No Violation of Court or Standing Discovery Orders*

Notwithstanding the government's immediate compliance with the only request Ramadan has ever made for these photos, the defendant does not hesitate in his motion to level reckless accusations, notably that "[t]his Court ordered the government to provide the

requested materials to defendant but they have disregarded the defendant's demand for the court ordered information." [R. 129 at 7]. Ramadan goes further, charging the government with disregarding its "obligations under the ... Court's *unambiguous* orders." *Id.* (emphasis added). Yet the defendant fails to cite to any order or hearing in support of these allegations, so the government and Court can only guess at what "unambiguous" order Ramadan now refers—an order that allegedly required the government to turn over photos of Ramadan's *previous apartments*—apartments Ramadan obviously knew about.

On June 12, 2018, the Court ordered the government to produce policies relating to retention of law enforcement officers' notes, the identities of agencies employing the investigators who interacted with Ramadan on August 15, 2017, and particular impeachment information relating to a specific FBI agent. [R. 82 at 2]. That can't be it. And a comprehensive review of the docket reveals no other order, "unambiguous" or otherwise, that required disclosure of the photos of the defendant's own apartment.

Ramadan alleges a violation, too, of the Standing Discovery Order, Administrative Order 03-AO-027, but this reference is as mystifying as

the last. With respect to the substance of that disclosure, that Order merely incorporates Rule 16(a)(1) and the government's obligation to disclose exculpatory evidence under *Brady*. It imposes no freestanding obligation; presumably, Ramadan includes it merely to make the list of supposed violations longer or more impressive.

### *No* Brady *Violation*

Ramadan's *Brady* argument misses the mark, for several reasons. First, it's always good to remember that *Brady* isn't a discovery rule, it's a due process one—there isn't a general constitutional right to discovery. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987); *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981). The alleged violation is pretrial, and "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *See United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994). "Delay only violates *Brady* when the delay itself causes prejudice." *Id.* at 561. "The *Brady* rule 'only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial.'" *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011) (quoting *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006)).

Ramadan doesn't even try to argue that the information revealed by the photos was unknown to him before their disclosure, which by itself should be fatal to his *Brady* claim. *See United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) ("No *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information."). These were pictures of Ramadan's previous apartments. Of all people, certainly Ramadan knows where he has lived (and from what windows he fired his guns). As the Court may recall, the videos of Ramadan firing weapons out of these apartment windows were found on Ramadan's own media storage drives and were played at his first bond hearing.

Perhaps most importantly, Ramadan fails to provide an explanation of how this information is "exculpatory." At most, he argues it might have affected the outcome of his bond hearing, an unusual application of "exculpatory" and a theory for which he provided no supporting citations. *Cf. United States v. Ruiz*, 536 U.S. 622, 629 (2002) (observing that a prosecutor has no obligation "to share all useful information with the defendant" during pretrial plea negotiations); *Clark*, 928 F.2d at 738 (holding that "the government had no duty to

disclose the evidence under *Brady* because it was not material to defendant's *guilt*") (emphasis added).

But we don't have to guess whether the photos would have changed that outcome: we know that they would not have, and Ramadan does, too. Ramadan had the photos, by his own admission, on February 21, 2019. He filed a bond motion on March 5, 2019 [R. 124], and did not mention the photographs or whatever exculpatory information they supposedly revealed to him—a former resident of the very places depicted in the photos—for the first time on February 21, 2019. At the hearing on that motion on March 12, the Court pressed counsel for Ramadan on the specific question of whether new information had been learned that would justify the Court changing its initial bond determination. Counsel said many things in response, but none of those statements had anything to do with the photos of the Ramadan's apartments.

And it is important to remember that the United States told Ramadan, in its motion opposing Ramadan's motion for bond filed back in June 2018, that it recovered the videos of the defendant shooting out of the windows of at least one of his apartments in Ypsilanti from his

9

media device. [R. 86 at 19]. Counsel for the United States then played these videos at Ramadan's bond hearing three weeks later.

The government fails to see how pictures of Ramadan's *own apartment*—taken months after Ramadan moved out; months after the Complaint in this case—are either unknown to him or exculpatory.

### *No Rule 16 Violation*

Ramadan does cite specifically to Rule 16(a)(1)(E), locating the government's obligation to turn over photos of his apartment in subsection (i) because, he alleges, they were "material to preparing the defense." He does not explain further, unfortunately, in what way these photos of a place that (1) he unquestionably knew well and (2) is different from the place where the things he illegally possessed were found are nevertheless material to the preparation of his defense.

But he can't just say it was material, he has to explain how. "A defendant does not satisfy [the] requirement that an object be 'material to the preparation of the defendant's defense' by means of merely conclusory arguments concerning materiality." *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991) (internal citation omitted).

And "defense," in Rule 16(a)(1)(E)(i), means the "defendant's

response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Ramadan's explanation of materiality, if he comes up with one, needs to "refute the Government's arguments that the defendant committed the crime charged" to fit under this rule. *See id.; see also United States v. Robinson*, 503 F.3d 522, 532 (6th Cir. 2007).

It bears repeating that we're talking about photographs of a place in which the defendant lived—that were taken months after the defendant lived there. His argument seems to be that these photographs are material to his defense because he could use them—though he did not even when the Court gave him a clear opportunity to do so—to establish that he wasn't putting anyone in danger by firing his gun out of the window of that apartment, as depicted in the video recording that he has had since the beginning of this case. To state the argument plainly is to demonstrate its absurdity.

### *Dismissal Improper*

Since no rule or obligation was violated, no remedy is required. But even if there had been a violation, it wouldn't be proper to skip right to the most severe sanction: dismissal. For one thing, "the Sixth

11

Circuit has cautioned against imposing harsh sanctions for Rule 16 violations when the failure to disclose amounts to only negligence, as opposed to intentional violations or those done in bad faith." *United States v. McClain*, 2017 WL 3710806, at *3 (W.D. Ky. August 28, 2017) (citing *United States v. Ganier*, 468 F.3d 920, 928 (6th Cir. 2006), and *United States v. Moody*, 132 F.3d 34, at *4 (6th Cir. 1997) (Table)). For another, the framework for crafting a remedy for a discovery violation requires the imposition of the least severe sanction that is necessary. *See United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995).

Ramadan alleges intentionality and bad faith but proffers no facts in support of that serious accusation. To be clear, the government's position is that it was under no obligation to disclose those photographs until at least the defendant's specific request on February 19, 2019, and probably not even then. But if the Court disagreed with that and held the government failed to disclose the photos when it should have, there would still be no basis for characterizing that failure as anything other than mere negligence.

As noted above, the defendant has suffered no prejudice. The ordinary remedy, when discovery is turned over late in the pretrial

12

process (or mid-trial), is continuance. Ramadan doesn't ask for that here, even as an alternative remedy, because he doesn't need any time to assimilate this information into his planned defense. That, in turn, undermines his materiality argument.

## *Conclusion*

For the foregoing reasons, the defendant's motion to dismiss is meritless and should be denied.

> Respectfully submitted,
>
> Matthew Schneider
> United States Attorney
>
> *s/Benjamin Coats*
> Benjamin Coats
> Hank Moon
> Assistant U.S. Attorneys
> 211 W. Fort St., Ste. 2001
> Detroit, MI 48226
> (313) 226-0220
> Hank.moon@usdoj.gov

April 15, 2019

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 15, 2019, I filed the foregoing document on the ECF system, which will send notice to Andrew Densemo and Colleen Fitzharris, attorneys for the defendant.

                                      *s/Benjamin Coats*
                                      Benjamin Coats
                                      Hank Moon
                                      Assistant U.S. Attorneys
                                      211 W. Fort St., Ste. 2001
                                      Detroit, MI 48226
                                      (313) 226-9734
                                      Benjamin.Coats@usdoj.gov