UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 17-20595
        HON. VICTORIA A. ROBERTS

YOUSEF MOHAMMAD RAMADAN,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR A BILL OF PARTICULARS [ECF No. 169]

### I.　INTRODUCTION

The Government charged Yousef Mohammad Ramadan ("Ramadan") in a three count Superseding Indictment alleging: (1) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); (2) possession of a stolen firearm in violation of 18 U.S.C. § 922(j); and (3) possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d).

Ramadan seeks a Bill of Particulars for each charge. Because some of the information Ramadan seeks is irrelevant to the charged offenses, and the remaining requested information is available through discovery, the Court **DENIES** his motion.

1

## II.     RELEVANT FACTUAL BACKGROUND

On August 17, 2017, Ramadan and his family arrived at the Detroit Metropolitan Airport and purchased one-way tickets to Jordan for a flight departing that evening. The family checked fifteen pieces of luggage and carried on six. When a Transportation Security Administration agent ran one of Ramadan's bags through an x-ray scanner, he was unable to view the contents. The agent opened the bag and discovered export-controlled body armor plates fitted for a bulletproof vest.

The body armor required documentation to be taken out of the country. Custom and Border Protection ("CBP") officers went to the gate in search of Ramadan. He and his family were already on the plane. CBP officers asked Ramadan to step off the plane; they spoke with him for a few minutes near the gate. CBP officers told Ramadan he would likely miss his flight; Ramadan asked if he could give his wife her medication before the plane left. The CBP officers agreed and accompanied Ramadan back onto the plane. Instead of handing his wife medication, Ramadan tried to slip a hard drive into her purse. CBP officers witnessed this, confiscated the hard drive, and escorted Ramadan and his family off the plane.

CBP officers took Ramadan and his family to a secondary inspection area. A CBP officer searched Ramadan's other luggage and found armor

plates, three load bearing vests (armor plate carriers), a bullet proof vest, gun magazines and holsters, a taser with two extra cartridges and an extra battery pack, law-enforcement grade pepper spray, rifle scopes, tactical knives, a gas mask, a black mask, a remote-controlled aerial drone, a combat carrying bag, and numerous electronic devices, including cellphones, tablets, memory cards, and external hard drives.

Other CBP officers spoke to Ramadan and reviewed his electronic media, which included pictures and video of violent propaganda. Based on that review, CBP contacted the Federal Bureau of Investigation ("FBI") and Homeland Security to conduct a further investigation. During an interview, Ramadan informed the officers that he had legally purchased certain firearms and stored them in a storage locker. Ramadan told the officers that – although he could not recall the specific address of the storage facility – he knew how to get there and offered to take the officers to the location. When agents agreed, Ramadan changed his story and told agents that he had given the firearms to a friend, whom he refused to identify.

Ramadan and his family were ultimately released without charges filed.

Following Ramadan's release, agents located a storage locker in Ann Arbor. Although it had been rented in Ramadan's wife's name, Ramadan was listed as the emergency contact and had made rental payments.

The FBI executed a search warrant for the storage unit on August 23, 2017. Inside the storage unit, agents found ammunition and several firearms/rifles, as well as a silencer, riflescopes, and various gun parts and magazines. Two of the firearms – a Jennings .22 caliber handgun and a Ruger .22 caliber handgun – had obliterated serial numbers.

The FBI continued its investigation. It determined Ramadan stole the Jennings handgun and found multiple videos showing Ramadan firing his defaced Ruger with the silencer attached. In one video, Ramadan uses the silencer to fire his Ruger out of his apartment window in a residential neighborhood.

On August 25, 2017, the Government filed a criminal complaint. On September 7, 2017, the Government charged Ramadan in an indictment. On November 13, 2018, the Government charged Ramadan in the three count superseding indictment.

Between the first and superseding indictments, Ramadan filed several substantive motions including but not limited to: motions to suppress, motions to dismiss, a motion for issuance of a Fed. R. Crim. P. 17(c) subpoena, a motion to strike testimony, motions to compel discovery, and a motion to compel *Giglio* materials.

Since the superseding indictment was filed in November of 2018 – approximately a year and a half ago – Ramadan filed a motion to dismiss, a motion for inspection of Grand Jury vote and transcripts or alternatively for particulars as to what was presented to the Grand Jury, a motion to adjourn trial dates, a motion to change venue, a motion to dismiss Count Three of the superseding indictment, motions *in limine* to exclude prior bad acts evidence and proposed exhibits, and finally, this Motion for a Bill of Particulars.

### III. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 7(f):

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

It is within the Court's sound discretion whether to grant or deny a bill of particulars. A bill of particulars serves three purposes: "(1) to inform the defendant of the nature of the charge against him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead his acquittal or conviction to bar another prosecution for the same offense when the Indictment is too vague and indefinite for such purposes." *United States v. Stone,* No. 10-20123, 2011 WL 4708783 (E.D.

5

Mich. Oct. 11, 2011) at *5 (citing *United States v. Brimley,* 529 F.2d 103, 108 (6th Cir. 1976)).

## IV.   ANALYSIS

The superseding indictment alleges:

### Count One (18 U.S.C. § 922(k)) – Possession of a Firearm with an Obliterated Serial Number

On or about August 23, 2017, in the Eastern District of Michigan, the defendant, Yousef Mohammad Ramadan, knowingly possessed firearms, that is:

1. A Jennings J-22 .22 caliber semi-automatic handgun; and

2. A Ruger MK II .22 caliber semi-automatic handgun,

    which had been shipped and transported in interstate and foreign commerce, from which the manufacturer's serial number had been removed, altered, and obliterated, in violation of Title 18, United States Code, Sections 922(k) and 924(a)(1)(B).

### Count Two (18 U.S.C. § 922(j)) – Possession of a Stolen Firearm

On or about August 23, 2017, in the Eastern District of Michigan, the defendant, Yousef Mohammad Ramadan, knowingly possessed a stolen firearm, that is, a Jennings J-22 .22 caliber semi-automatic handgun, which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearm was stolen, in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2).

### Count Three (26 U.S.C. § 5861(d)) – Possession of Unregistered Silencer

> On or about August 23, 2017, in the Eastern District of Michigan, the defendant, Yousef Mohammad Ramadan, knowingly possessed a firearm, that is, a silencer, not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

ECF No. 113, PageID.2278-2279.

On Counts I and II, Ramadan seeks: the exact dates the items were stolen; where and from whom they were stolen; if Ramadan did not steal or convert the firearms, the dates the firearms came into his possession and from whom; specification of any acts taken by Ramadan that aided in the theft of the firearms and obliteration of the serial numbers; when and from whom the Ruger firearm was stolen, and the date its serial number was obliterated; and when and from whom the Jennings firearm was stolen, and the date its serial number was obliterated.

On Count III, Ramadan seeks the name of the manufacturer of the silencer; the date it was sold; the date it was shipped to the initial buyer; where it was sold; to whom it was sold; the date it came into his possession; the date and time he was required to register the silencer, and the date and time it became unlawful for him to possess it.

7

Ramadan acknowledges the Government provided "robust" discovery, but says that without this specific information, he is unable to adequately defend himself against the charges.

The Government objects. It says: (1) the indictment is legally sufficient; and (2) the motion is untimely, frivolous, and seeks to obtain information that is irrelevant to the pending charges, or already available to Ramadan through discovery.

The Court agrees with the Government. Regarding Count II, to the extent Ramadan seeks the exact dates the Jennings firearm was stolen, from whom it was stolen, and the date it came into his possession, the Court denies this request as **MOOT.** The Government specified in its response that it provided this information in discovery. The Government notes its production includes reports and photographs from the August 23, 2017 search warrant execution at the storage unit, including photographs of the firearms and silencer at issue. Additionally, the Government says it produced reports identifying the specific customer from whom the Jennings firearm was stolen, and that it and Ramadan's previous counsel flew to California and deposed the individual from whom the firearms were stolen. Ramadan does not – nor could he – dispute this; the Government attaches the deposition transcript to its response. A defendant is not entitled to a bill of

particulars for information that is available through other sources. *United States v. Stone*, No. 10-20123, 2011 WL 4708783 (E.D. Mich. Oct. 11, 2011) at *5 (quoting *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986)).

The remaining information Ramadan requests is irrelevant to the charged offenses.

On Count I, the Government must prove Ramadan: "(1) knowingly possessed a firearm; (2) which had its serial number altered, removed, or obliterated; and (3) that the firearm had been shipped, received, or transported in interstate commerce." *United States v. Peete,* 781 F. App'x 427, 432 (6th Cir. 2019) (internals quotations omitted).

The manner in which the firearms came into Ramadan's possession, the date the firearms came into his possession and had their serial numbers obliterated, and any specific acts Ramadan took to aid in the theft and obliteration of the serial numbers are irrelevant.

On Count III, the Government must prove Ramadan: (1) knowingly possessed the device described in the indictment; (2) the device was a firearm silencer; (3) Ramadan knew of the characteristics of the device that would make it function as a firearm silencer and he intended it to function as such, even if it did not actually work to silence a firearm; and (4) the firearm

silencer was not registered to the defendant." *United States v. Rose,* 522 F.3d 710, 719-20 (6th Cir. 2008).

The manufacturer of the silencer, the date it was sold, the date it was shipped to the initial buyer, where and to whom it was sold, the date it came into Ramadan's possession, and the date and time Ramadan was required to register it are irrelevant to the charge.

The Court finds the superseding indictment sufficiently informs Ramadan of the charges against him and permits him to prepare a defense and avoid surprise at trial.

## V. CONCLUSION

The superseding indictment is constitutionally sufficient – it describes the nature of the charges and permits Ramadan to prepare a defense. As an aside, the Court believes Ramadan is clear on the charges against him; Ramadan filed over 18 substantive motions during the two and half years this case has been pending.

The Court **DENIES** Ramadan's motion.

**IT IS ORDERED.**

Date: May 27, 2020        s/ Victoria A. Roberts
                          Victoria A. Roberts
                          United States District Judge