UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,        CR. NO. 17-20595

v.

                         HON. VICTORIA A. ROBERTS

YOUSEF RAMADAN,

        Defendant.

_____/

## REPLY TO GOVERNMENT'S RESPONSE OPPOSING RAMADAN'S MOTION FOR RELEASE ON UNSECURED BOND [215]

Defendant Yousef Ramadan, through his attorney, Andrew Densemo, of the Federal Community Defender, hereby replies to the plaintiff's response to his motion for release on unsecured bond. In support of same, Mr. Ramadan states as follows:

Counsel states once again that the applicable legal standards are found at 18 U.S.C. 3142 and 3145. These sections were previously cited in the docket entry #215. The effects of the resurgence of COVID-19 within the Milan detention center have prohibited Mr. Ramadan's ability to receive a speedy trial, effective assistance of counsel, participate in his own defense, prepare for trial and to receive a fair trial. Mr. Ramadan has prepared a release plan which is sufficient to assure his safety and the safety of the community. The defense has previously addressed factual findings

1

and the government's opinions regarding allegations of dangerousness and risk of flight, and will do so more extensively herein.

WHEREFORE, Defendant respectfully requests that this Court enter an Order releasing him on an unsecured bond.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Andrew Densemo
ANDREW DENSEMO (P37583)
Attorney for Defendant
613 Abbott, Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5829
E-mail: andrew_densemo@fd.org

Dated: December 30, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

           Plaintiff,           CR. NO. 17-20595

v.

                                  HON. VICTORIA A. ROBERTS

YOUSEF RAMADAN,

           Defendant.
_____/

**BRIEF IN SUPPORT OF**
**REPLY TO GOVERNMENT'S RESPONSE OPPOSING RAMADAN'S**
**MOTION FOR RELEASE ON UNSECURED BOND [215]**

# **TABLE OF CONTENTS**

**PAGE**

INDEX OF AUTHORITIES ................................................................................... ii

 STATEMENT OF THE ISSUE PRESENTED

    SHOULD DEFENDANT BE RELEASED FROM PRETRIAL
    DETENTION? ....................................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
RELIEF SOUGHT ................................................................................................ iv

ARGUMENT ........................................................................................................ 1

CONCLUSION ..................................................................................................... 6

ii

# INDEX OF AUTHORITIES

**Statutes**

18 U.S.C. § 3142(f) and (i), & 3145 .................................................... iv, 1, 2, 3, 5, 6

## **STATEMENT OF THE ISSUE PRESENTED**

**SHOULD DEFENDANT BE RELEASED FROM PRETRIAL DETENTION?**

Defendant answers:            YES.

The Government answers:    NO.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR THE RELIEF SOUGHT

The controlling or most appropriate authority for the relief sought in this motion is: 18 U.S.C. § 3142(f) &(i) and 3145.

## **ARGUMENT**

### **MR. RAMADAN SHOULD BE RELEASED FROM PRETRIAL DETENTION, UNDER HOME CONFINEMENT SECURED WITH AN ELECTRONIC GPS TETHER.**

Counsel submits that the gravity of the widespread resurgence of the Coronavirus, which the plaintiff has continuously and erroneously claimed is under control at FDC Milan, is a circumstance this Court could not have considered in previous pleadings because the conditions at the FDC have become exponentially worse than they were before.  This information is material given the seriousness of the outbreak and how it affects Mr. Ramadan's ability to receive the effective assistance of counsel, gain access to his legal material, gain access to law the library, prepare for trial and to maintain his hygiene as well as his physical and mental health.

Mr. Ramadan has already been incarcerated for going on four years. Now, in addition to that prolonged incarceration, he has to deal few if any phone calls or emails to his attorney and family, no legal visitation, no family visitation, infrequent showers, religious restrictions, dietary restrictions and the mental and emotional toll that comes with being incarcerated under these circumstances. These indignities and illegal deprivations are routine and can be easily dismissed as minor inconveniences or immaterial.  They are neither acceptable, routine, minor or immaterial. Mr. Ramadan should be released pursuant to the release plan we have developed.

1

Mr. Ramadan's release plan is wholly adequate, in that he has an established residence with a family member, Asma Ramadan, in her townhouse in Ypsilanti, Michigan. He will be picked up by his sister and driven to her townhouse. She lives fifteen minutes away from the detention center. She will provide a mask and hand sanitizer. Mr. Ramadan will live with his sister and her husband. He will have his own room. Mr. Ramadan will be given a home health care check which will include the taking of his temperature. Shortly thereafter he will be taken by his sister or brother in law to an urgent care facility where he will receive a rapid Covid-19 test. Mr. Ramadan will contact Pre-Trial Services within 24 hours of his release and will advise them of the result of the test within 48 hours. He will be supervised by a Pre-Trial Services Officer, through remote and/or in-person reporting. He will be released with either standard release conditions or more restrictive conditions which may include some form of home confinement, or electronic monitoring. All of these optional conditions were fully explained in defendant's previous motions for release. The dramatic change in circumstances at the detention center calls for the immediate and renewed questioning of the propriety of Mr. Ramadan's continued detention.

Mr. Ramadan qualifies for temporary release under these circumstances. 18 U.S.C. 3142(i) states that "The judicial officer may by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such

release to be necessary for preparation of the person's defense or for another compelling reason." The plain language of the statute means that the defendant's inability to prepare a defense is in and of itself a compelling reason for temporary release. This issue was raised in defense counsel's initial pleadings but were completely ignored or disregarded by the plaintiff in their response. The plaintiff cannot rebut the presence of the virus within the federal prison system, and they also cannot rebut the deleterious effects the presence of virus has had on an inmate's constitutional rights, to speedy trial, to effective assistance of counsel, to access legal materials, to freely practice their religion, and not to be treated in a way which is dangerously close to cruel and unusual punishment.

The defense absolutely rejects the plaintiff's contentions that Mr. Ramadan is a danger to the community and a flight risk. The government has never offered a shred of evidence to support its repeated claims that Mr. Ramadan is a flight risk. Mr. Ramadan has continuously refused to enter into a plea that would terminate his U.S. citizenship. If Mr. Ramadan had plans to flee the country once released on bond, why then would he cling so desperately to his citizenship? If he fled the country, and returned he would be arrested and imprisoned for a longer period of time. He has already served three fourth of the high end of his sentencing guidelines. He has no history of failing to appear for court appearances. His wife and children

3

are all U.S. citizens. Mr. Ramadan has several family members who are also citizens and some who reside within the Detroit metropolitan area.

Mr. Ramadan has never been charged or convicted of threatening or injuring anyone in his life. A good part of the danger the prosecution foresees is rooted in suspicion. This suspicion has its foundation in a mischaracterization of Mr. Ramadan's view regarding ISIS. Any suggestion of support or agreement with the religious or political views expressed by ISIS immediately and permanently brands the "sympathizer" as dangerous. Mr. Ramadan made the mistake of expressing his opinion, that he agreed with some of the religious tenets of ISIS. What continues to fall on deaf ears is his statement, that he did not support the violence the group engages in. Of all of the statements attributed to Mr. Ramadan, the most important statement he made is rarely mentioned.

Mr. Ramadan's reasons for reopening the detention hearing aren't based merely on a "generalized fear that he may catch Covid-19" and nor is it based on the exact same release plan he proposed in earlier filings. Mr. Ramadan's right to the effective assistance of counsel is being denied. He is being denied to access to his attorney, the right to meaningfully consult with his attorney, the right to a speedy trial and the right to prepare a defense in that trial. He is being denied he right to participate in his own defense because of the effects the corona virus has had on BOP facilities. He is being denied visitation with his family, access to legal

materials and the law library. The resurgence of the virus and the effects of it were not present to the extent they are now and they are stripping Mr. Ramadan of his trial rights.

The dramatic change in circumstances at the detention center and the ramifications of that change cannot be understated. Mr. Ramadan's defense and ability to prepare for trial have been severely undermined by the actions taken by the BOP to combat the spread of the virus within the detention center. The conditions of incarceration Mr. Ramadan is currently facing are not the same as they were when he petitioned for bond three months ago. The government argues that in order for this court to reopen the detention hearing under section 3142(f) the Court has to find "that information exists that was not known to the movant at the time of the initial hearing" and that this new information has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such a person as required and the safety of any other person and the community. Mr. Ramadan has presented a wealth of new information that he did not and could not have known three months ago.

Mr. Ramadan is entitled to be temporarily released pursuant to 18 U.S.C 3142(i) due to his inability to receive a speedy trial, to receive effective assistance of counsel, to participate in his defense, to prepare a defense or to prepare for trial

5

are individually and jointly exceptional circumstances warranting his temporary release, prior factual findings notwithstanding.

Assuming Mr. Ramadan's medical condition were embellished, the current uncontrolled epidemic within the detention center presents a serious risk to his health and safety, even for inmates with no pre-existing medical conditions that make them more susceptible to contracting the virus. The fact remains hundreds of inmates have tested positive for the virus within a matter of days. The BOP is struggling to contain its spread. It is unlikely the coronavirus will be contained within the next six to eight months. Therefore, Mr. Ramadan is facing the increasing likelihood of not having this case resolved until the end of 2021, all while incarcerated for more than four years on charges which presume his release. Mr. Ramadan may be responsible for some of the delay in this case but not all of it.

The government has relied upon and rehashed the same arguments for detention it leaned upon in 2017. It's as if time has stopped, and circumstances are exactly the same as they were then. Plaintiff has argued that Mr. Ramadan is a danger to the community because of his "sympathy for and support of ISIS". This is a gross mischaracterization of Mr. Ramadan's beliefs. Even if Mr. Ramadan agrees with some of the religious tenets of ISIS, which the constitution allows, this position is not a bar to his release on bond. More importantly, ISIS doesn't appear to have had any major significance in the lives of U.S. citizens for quite some time. Yet, the

ISIS bogeyman is invariably relied upon to invoke a visceral reaction against Mr. Ramadan.

The government's other arguments for detention are equally unavailing. Mr. Ramadan has **not** been convicted of possessing a locker full of weapons or stolen guns, or gun parts or guns with obliterated serial numbers. Mr. Ramadan's statement about making a pipe bomb does not make him a danger to the community, especially given the community's ability to obtain this same information on You Tube, the History Channel or the early Terminator Movies. The "picture" of the homemade pipe bomb apparently was taken overseas by someone other than Yousef Ramadan. The video of Mr. Ramadan, supposedly shooting out of window, does not show him shooting at anyone or into a residential area. Mr. Ramadan had a substantial history of employment prior to his arrest. He was only unemployed at the time these charges arose, because he was going overseas to attend to his elderly father. His wife and children are all United States citizens. The so call escape paraphernalia was given that name by the detention center staff and the government. The number of pictures of credit cards, ID cards, and a Custom officer's uniform are miniscule when compared with the hundreds of thousands of photographs and videos contained on Mr. Ramadan's electronic media. And none of these items have been connected to any criminal activity.

7

Certain representations that have been made about Mr. Ramadan's health were not as accurate as they could have been. This is not a justification for his continued incarceration in light of the current conditions at the detention center and the impact those conditions are having on his right to a speedy trial, effective assistance of counsel, his ability to prepare for trial, to receive a fair trial and the threats to his health.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests this Honorable Court grant him release with any conditions that the court believes reasonably necessary to assure his appearance in court or the safety of the community.

WHEREFORE, Defendant respectfully moves this Honorable Court, pursuant to its authority under 18 U.S.C. § 3142 and 3145, to order the temporary release of Defendant from pretrial detention.

          Respectfully submitted,

          **FEDERAL COMMUNITY DEFENDER**

          s/Andrew Densemo
          ANDREW DENSEMO (P37583)
          613 Abbott, Suite 500
          Detroit, Michigan 48226
          Phone: (313) 967-5829
          E-mail: andrew_densemo@fd.org

Dated: December 30, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,    CR. NO. 17-20595

v.

            HON. VICTORIA A. ROBERTS

YOUSEF RAMADAN,

    Defendant.
                /

## **CERTIFICATE OF SERVICE**

   I hereby certify that on December 30, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

   Douglas C. Salzenstein
   Hank Moon
   Assistant U.S. Attorneys
   211 West Fort Street, Suite 2001
   Detroit, MI 48226

          Respectfully submitted,

        **FEDERAL COMMUNITY DEFENDER**

        s/Andrew Densemo
        ANDREW DENSEMO (P37583)
        Attorney for Defendant
        613 Abbott, Suite 500
        Detroit, Michigan 48226
        Phone: (313) 967-5829
        E-mail: andrew_densemo@fd.org

Dated: December 30, 2020