UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,              CR. NO. 17-20595

v.

                                  HON. VICTORIA A. ROBERTS

YOUSEF RAMADAN,

                Defendant.

_____/

## BRIEF IN SUPPORT OF MOTION FOR ATTORNEY CONDUCTED VOIR DIRE AND SHOWING OF UNCONSCIOUS BIAS VIDEO

NOW COMES the Defendant, Mr. Yousef Ramadan (hereinafter "Mr. Ramadan"), through his counsel, Assistant Federal Public Defender Andrew Densemo, and respectfully moves this Court to allow for an attorney conducted voir dire discussion on the issue of unconscious racial bias. Additionally, the undersigned moves for the court to allow for the showing of an unconscious bias video preceding said voir dire.

## **TABLE OF CONTENTS**

**PAGE**

INDEX OF AUTHORITIES.........................................................................ii

CONCISE STATEMENT OF THE ISSUE PRESENTED.......................................1

    **SHOULD DEFENSE COUNSEL BE PERMITTED TO CONDUCT VOIR DIRE AND SHOW AN UNCONSCIOUS BIAS VIDEO TO POTENTIAL JURORS?**...........................................................................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT..........................................................................................2

INTRODUCTION .....................................................................................3

DISCUSSION ..........................................................................................4

    The Prevalence and Veiled Nature of Unconscious Bias Poses a Threat to Mr. Ramadan's Right to an Impartial Jury .....................................................4

    Voir Dire Discussion on Unconscious Race Bias ...............................10

    Allows for the Proper Exercise of Challenges......................................10

    The Unconscious Bias Video Further Ensures a Fair and Impartial Jury ...........12

    Other Jurisdictions Routinely Show the Unconscious Bias Video ......................14

    The Government's Opposition to Training Jurors in Unconscious Bias and Skepticism of the Research Are Contrary to the Policy of the Department of Justice..........................................................................................15

    The Unconscious Bias Video is Not Duplicative or Confusing ...........................17

CONCLUSION .......................................................................................19

i

# INDEX OF AUTHORITIES

**Cases**

*Batson v. Kentucky*, 476 U.S. 79 (1986) ...................................................................10

*Ham v. South Carolina*, 409 U.S. 524 (1973) ...........................................................5

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) ...............................................10

*Morgan v. Illinois*, 504 U.S. 719 (1992)....................................................................4

*Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976) .............................................10

*Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).................................................5

*Rosales-Lopez v. United States*, 451 U.S. 182 (1981) ..............................................5

*Rose v. Mitchell*, 443 U.S. 545 (1979) .......................................................................5

*Texas Dept. of House. and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) ........................................................................16

*Turner v. Murray*, 476 U.S. 28 (1986)........................................................................5

*United States v. Ray*, 803 F.3d 244 (6th Cir. 2015)...................................................7

*United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017)..........................................6

**Statutes and Constitutional Provisions**

U.S. Const. amend. VI ................................................................................................4

**Other**

American Bar Association, *Implicit Bias Initiative*, https://www.americanbar.org/groups/litigation/initiatives/task-force-implicit-bias/ (last visited Feb. 20, 2020) ........17

Anna Roberts, *(Re)Forming the Jury: Detection and Disinfection of Implicit Juror Bias*, 44 Conn. L. Rev. 827 (2012)....................................................................4

Bertrand, Marianne and Mullainathan, Sendhil. 2004. Are Emily and Greg More Employable than Lakisha and Jamal? A Field Experiment on Labor Market." The American Economic Review 94(4): 991-1013 ........................................9

Brownstein, Michael, "Implicit Bias", The Stanford Encyclopedia of Philosophy (Spring 2017 Edition), Edward N. Zalta (ed.), available at https: // plato.stanford.edu/entries/implicit-bias/ ........................................................5

Cynthia Lee, A New Approach to Voir Dire on Racial Bias, 5 UC Irvine L. Rev. 843 (2015)...............................................................................................6

Dale Larson, A Fair and Implicitly Impartial Jury: An Argument for Administering the Implicit Association Test During Voir Dire, 3 DePaul J. for Soc. Just. 139 (2010)...............................................................................................6

Hon. Kenneth V. Desmond, Jr., The Road to Race and Implicit Bias Eradication, Boston B.J., Summer 2016, at 3 ....................................................................8

Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149 (2010) 4, 7, 11

Kang & Kristin Lane, *Seeing Through Colorblindness: Implicit bias and the Law*, 58 UCLA L. REV. 465 (2010) ....................................................................7

National Center for State Courts, Helping Courts Address Implicit Bias, Frequently Asked Questions, What is Implicit Bias?, available at http://www.ncsc.org./media/Files/PDF/Topics/Gender%20and%20Racial%20F

airness/Implicit%20Bias%20FAQs%20rev.ashx (last visited May 27, 2017) ...................................................................................................11

Robert J. Smith & Justin D. Levinson, The Impact of Implicit Racial Bias on the Exercise of Prosecutorial Discretion, 35 Seattle U.L. Rev. 795 (2012)..........6

Sagar & Schofield, Racial and Behavioural Cues in Black and White Children's Perceptions of Ambiguously Aggressive Acts, 39 J. Personality & Soc. Psychol. 590 (1980)..................................................................................6

*Skilling v. United States*, 561 U.S. 358 (2010) .......................................................13

U.S. Dep't of Justice, *Department of Justice Announces New Department-Wide Implicit Bias Training for Personnel, Press Release Number 16-747* (June 27, 2016), https://www.justice.gov/opa/pr/department-justice-announces-new-department-wide-implicit-bias-training-personnel...............................16

U.S. District Court for the Northern District of California, *Unconscious Bias Video for Potential Jurors*, https://www.cand.uscourts.gov/attorneys/unconscious-bias-video-for-potential-jurors/..........................................................................................................14

United States Department of Justice, *FAQs on Implicit Bias* (June 27, 2016), https://www.justice.gov/opa/file/871121/download ....................................16

United States Department of Justice, *Memorandum for All Department Law Enforcement Agents and Prosecutors* (June 27, 2016), https://www.justice.gov/opa/file/871116/download......................................................................16

United States District Court for the Western District of Washington,*Unconscious Bias Juror Video*, available at https://www.wawd.uscourts.gov/jury/unconscious-bias............................................................12

United States Sentencing Commission "Demographic Differences in Sentencing: An Update to the 2012 Booker Report (November 2017) .............................8

iv

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

**SHOULD DEFENSE COUNSEL BE PERMITTED TO CONDUCT VOIR DIRE AND SHOW AN IMPLICITLY BIAS VIDEO TO POTENTIAL JURORS?**

Defendant answers:          YES.

The Government answers:     NO.

-

1

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT</u>

The controlling or most appropriate authority for the relief sought in this motion is: Rosales-Lopez v. United States, 451 U.S. 182 (1980) & Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 171 (2010).

## INTRODUCTION

Mr. Ramadan, is a 38-year old, Palestinian American male who is currently charged with several counts alleging possession of stolen firearms with obliterated serial numbers and an unregistered silencer. Shortly, he will appear for trial in the Eastern District of Michigan, where the undersigned expects that a group of overwhelmingly white jurors will decide his fate. It is irreducible that race permeates every facet of our society, and the courtroom, despite its efforts to ensure a neutral environment, is not immune from the biases or prejudices that accompany race.

While certain voir dire questions may allow for the court to exclude individuals who possess explicit biases against people of color, our system often fails to identify and address implicit bias. These implicit biases, while often subtle and less overt, are nonetheless just as dangerous to the accused. In order to ensure that the pool of jurors does not possess said implicit biases, Mr. Ramadan is requesting that this court allow for the attorneys to conduct a voir dire discussion on the issue of implicit racial biases. In order to facilitate said discussion, Mr. Ramadan requests that this court allow for the pool of jurors to view a video on implicit bias produced by the Western District of Washington prior to the attorney led voir dire discussion.

The goal here is not to change any opinions; instead, it is to ensure that Mr. Ramadan has a fair and impartial jury. *See generally* Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 171 (2010), and Anna Roberts, *(Re)Forming the Jury: Detection and Disinfection of Implicit Juror Bias*, 44 Conn. L. Rev. 827, 859-60, n. 254 (2012).

## DISCUSSION

### The Prevalence and Veiled Nature of Unconscious Bias Poses a Threat to Mr. Ramadan's Right to an Impartial Jury

As this court undoubtedly knows, jury impartiality is the core requirement of the right to a trial by jury. Said requirement provides that the accused will be tried by a group of "indifferent" jurors who lack any biases or prejudices that would impact their ability to make a fair decision based solely upon the evidence. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (an impartial jury is one that has not formed an opinion prior to hearing the evidence and one that does not base its decision upon pre-formed conclusions and biases): *see also* U.S. Const. amend. VI (the accused shall enjoy the right to a speedy and public trial, by an impartial jury).

4

Furthermore, the Supreme Court has held that it is an "unmistakable principle . . . that discrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice.'" *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017) (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)). The Supreme Court has identified the jury as a criminal defendant's primary protection against racial prejudice. *Id.* ("The jury is to be a criminal defendant's fundamental protection of life and liberty against race or color prejudice[.]") (internal quotation marks and quotation omitted). For this reason, "[i]n an effort to ensure that individuals who sit on juries are free of racial bias, the [Supreme] Court has held that the Constitution at times demands that defendants be permitted to ask questions about racial bias during *voir dire*." *Id.* (citing *Ham v. South Carolina*, 409 U.S. 524 (1973); *Rosales-Lopez v. United States*, 451 U.S. 182, 189-90 (1981) (plurality opinion); *Turner v. Murray*, 476 U.S. 28 (1986).

The ability of Mr. Ramadan to enjoy the right to an impartial jury is threatened by implicit bias. Implicit bias is inimical to impartiality, as it entails "relatively unconscious and relatively automatic features of prejudiced judgment and social behavior."[1] This Circuit has acknowledged the problem of implicit biases and the

---

1 *See* Brownstein, Michael, "Implicit Bias", The Stanford Encyclopedia of Philosophy (Spring 2017 Edition), Edward N. Zalta (ed.), available at https: // plato.stanford.edu/entries/implicit-bias/.

disproportionate manner in which said biases negatively impact African American citizens. *See United States v. Robinson*, 872 F.3d 760, 785 (6th Cir. 2017) (B. Donald, concurring in part) (discussing the manner in which implicit bias operates and inures to the detriment of African Americans). Specifically, research has established that the majority of tested Americans harbor negative implicit attitudes and stereotypes towards African Americans and dark skinned peoples. For instance, there is a consistent implicit association of "black with negative qualities such as bad and unpleasant, [or] with negative stereotypes like aggressive and lazy."[2] Moreover, and especially pertinent for this matter, studies have established that people tend " to interpret actions by a black person as more violent or threatening than the same actions performed by a white person."[3]

---

[2] *See* Robert J. Smith & Justin D. Levinson, *The Impact of Implicit Racial Bias on the Exercise of Prosecutorial Discretion*, 35 Seattle U.L. Rev. 795, 802 (2012).

[3] *See* Sagar & Schofield, *Racial and Behavioural Cues in Black and White Children's Perceptions of Ambiguously Aggressive Acts*, 39 J. Personality & Soc. Psychol. 590, 597 (1980); *see also* Cynthia Lee, *A New Approach to Voir Dire on Racial Bias*, 5 UC Irvine L. Rev. 843, 844 (2015) (finding that implicit biases are discriminatory biases based on either implicit attitudes-feelings that one has about a particular group or implicit stereotypes that one associates with a particular group. African Americans, for example are stereotypically linked to crime and violence; their behavior is more likely to be viewed as violent, hostile and aggressive than is the behavior of whites; and they are more readily associated with weapons than are whites); Dale Larson, *A Fair and Implicitly Impartial Jury: An Argument for Administering the Implicit Association Test During Voir Dire*, 3 DePaul J. for Soc. Just. 139, 154 (2010) (holding that implicit bias against socially underprivileged groups and out groups is prevalent in our culture. As a result, there

For Mr. Ramadan's case, without some form of intervention to, at the very least, force potential jurors to acknowledge and reflect on their biases, this honorable court runs the risk of having a jury that will allow biases to distort their interpretation and perception of the evidence presented against Mr. Ramadan. Whether said jury intends to act in a bias way is immaterial-the end result for Mr. Ramadan is the same. What makes implicit biases especially egregious in the context of jury trials, is that said biases are often unconscious in nature: a potential juror may truly believe that they possess no biases against people of color. Implicit biases are often not conscious, intentional or maliciously based, as opposed to explicit bias, generally defined as bias that is openly expressed. *See United States v. Ray*, 803 F.3d 244, 260-261 (6th Cir. 2015) (citing Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir-Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 HARV.L. & POL'Y REV. 149, 152 (2010); Kang & Kristin Lane, *Seeing Through Colorblindness: Implicit bias and the Law*, 58 UCLA L. REV. 465, 465 (2010). Additionally, Massachusetts State Judge Kenneth Desmond has said, "in the most basic sense, implicit bias is thoughts about other people you didn't know you had. Consequently, it is difficult for individuals

---

is a chance that implicit bias is present anytime a member of such a group is the defendant in a criminal trial.").

who do not fall victim to the impact of certain biases to identify the ways they are manifested." [4]

As this court can imagine, such implicit biases pose an egregious problem for an accused who possesses membership in a group that society historically and presently stereotypes. In the case at hand, Mr. Ramadan, as a Muslim Palestinian American man, is subject to a litany of prejudices and stereotypes that are grounded in centuries of racist policies and practices. The fact that implicit bias does not manifest itself in slurs or overtly discriminatorily behavior does not make it any less dangerous for Mr. Ramadan. In fact, the covert nature of said biases arguably poses a greater threat, as the possessor of said biases may be unaware of his/her implicit bias and will simply give ostensibly neutral answers regarding issues of race during a standard voir dire process. One can see the manifestations of implicit and explicit bias all over the federal judicial system. For example, African American men received sentences that are on average 19.1 percent longer than similarly situated white male defendants. [5] In light of the very real nature of implicit bias, and the fact

---

4 *See* Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit Bias Eradication, Boston B.J.*, Summer 2016, at 3.

5 *See* United States Sentencing Commission "Demographic Differences in Sentencing: An Update to the 2012 Booker Report (November 2017).

that Mr. Ramadan is accused of acting criminally, it only makes sense to acknowledge race and ethnicity the manner in which it may impact a juror's views.

It is also pertinent to note that the undersigned is an African American man, and accordingly, the juries' perceptions of him may be colored by implicit racial biases. The fact that Mr. Ramadan's representatives during trial will also be subject to implicit racial biases provides additional support for the proposed voir dire video and attorney led discussion.

It must also be noted that Mr. Ramadan has an identifiable middle eastern or Muslim first and last name. Yousef means "God increases", and "Ramadan" is the ninth and considered the holiest of months, in the Muslim lunar calendar. Significant evidence exists that individuals with "black" or ethnic sounding names face discrimination in employment and other areas. *See* Bertrand, Marianne and Mullainathan, Sendhil. 2004. Are Emily and Greg More Employable than Lakisha and Jamal? A Field Experiment on Labor Market." The American Economic Review 94(4): 991-1013 (finding that résumés with white sounding names received fifty percent more callbacks than identical résumé with "black" sounding names). Accordingly, this race related characteristic may evoke all types of pernicious assumptions in the minds of jurors. Said assumptions must be ferreted out in a sufficient manner to allow for a fair trial.

9

**Voir Dire Discussion on Implicit Race Bias**
**Allows for the Proper Exercise of Challenges**

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, no party can exercise peremptory challenges based on personal race bias or prejudices. Where a prima facie case of racial discrimination regarding peremptory challenges is made, the party must articulate a racially neutral explanation. To enable Mr. Ramadan to exercise his peremptory challenges effectively, and to ensure that challenges can be supported by a race neutral explanation, a discussion regarding implicit bias is necessary. Moreover, an open discussion regarding implicit bias will also allow the parties to gather information necessary to make challenges for cause.

As stated in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143-144 (1994), "Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently." *See also Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 602 (1976) (Brennan, J., concurring in judgment) (voir dire "facilitates intelligent exercise of peremptory challenges and helps uncover factors that would dictate disqualification for cause."). The language of *J.E.B.* provides support for Mr. Ramadan's proposal, as Mr. Ramadan will need to delve into issues of implicit bias beyond what is available via standard voir dire questions on impartiality. An open discussion with the panel

10

regarding implicit bias will allow for greater engagement with potential jurors and facilitate the parties' ability to gather information regarding potential biases.

The proposed voir dire of Mr. Ramadan would counter the shortfalls inherent in the often used questions of "Can all of you be fair and impartial in this case?" or "Will the accused's race or ethnicity have any impact upon your ability to be impartial?"  While jurors almost uniformly answer that they can be fair, merely asking jurors said questions does little to ferret out bias, in part, because the question presumes that the juror is conscious of his/her bias.[6] While the focus of this motion is implicit bias, standard questions pertaining to impartiality oftentimes fail to ferret out explicit biases concerning race. Studies have repeatedly established that "people are often unwilling to provide responses perceived as socially undesirable and therefore tend to report what they think their attitudes should be rather than what they know them to be."[7] Whether it's implicit or conscious in form, biases can best be identified via a setting that encourages discussion and participation amongst potential jurors.

---

6 *See* Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge–Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solution*s, 4 Harv. L. & Pol'Y Rev. 149, 152 (2010).
7 See National Center for State Courts, *Helping Courts Address Implicit Bias, Frequently Asked Questions, What is Implicit Bias?, available at* http://www.ncsc.org./media/Files/PDF/Topics/Gender%20and%20Racial%20Fairnes s/Implicit%20Bias%20FAQs%20rev.ashx (last visited May 27, 2017).

11

Finally, attorneys are in a better position to determine how implicit biases might affect the outcome of the case because they usually know the case better than the trial judge. In Mr. Ramadan's case, his attorney is familiar with the alleged actions of the defendant as well as the manner in which implicit biases may color jurors' judgments of the facts. Accordingly, attorneys can formulate relevant discussion questions that reveal prospective jurors' biases and evaluate the answers with an eye toward the particulars of the case.

### The Implicit Bias Video Further Ensures a Fair and Impartial Jury

As discussed at the top of this brief, the undersigned is also requesting that a video out of the Western District of Washington be played prior to attorney led voir dire in order to facilitate discussion amongst jurors.  The U.S. District Court for the Western District of Washington took an innovative first step to remedy the issues of implicit bias and commissioned a video in coordination with the U.S. Attorney's Office, the Federal Public Defender, and civil litigators, that all judges now show to every potential jury before jury selection in each and every case. *See* United States District Court for the Western District of Washington, *Unconscious Bias Juror Video*, available at https://www.wawd.uscourts.gov/jury/unconscious-bias ("The video and jury instructions on this page were created by a committee of judges and attorneys and will be presented to jurors in

every case with the intent of highlighting and combating the problems presented by unconscious bias.").

Showing prospective jurors a brief, scientifically uncontroverted video is appropriate, sound, and within the Court's wide discretion to ensure a fair and impartial jury. *See Skilling v. United States*, 561 U.S. 358, 386 (2010) ("Jury selection . . . is particularly within the province of the trial judge." The proposed video is a neutral, education presentation. The video features three people: U.S. District Judge John C. Coughenour, civil rights attorney Jeffrey Robinson, and then-U.S. Attorney for the Western District of Washington, Annette Hayes.

The beginning of the video discusses the difference between intentional discrimination and unconscious bias, to ensure that potential jurors understand that explicit biases are not the subject of this video. Narrators differentiate between conscious bias and unconscious bias: "[O]ur conscious biases can also lead to intentional and harmful discrimination." (Unconscious Bias Video at 1:42–1:48.) "For example, consciously deciding that a person is not entitled to equal rights based on their race, sex, age, nationality, or religion is a clear example of intentional, deliberate and harmful discrimination." (Video at 1:48–2:05.) But after the nine seconds of images, the speaker clearly states: "Today, though, I want to talk to you about unconscious bias. Unconscious bias is different and it's something we all have,

13

simply because we're human." (Video at 2:05–2:16.) The video goes on to discuss how unconscious bias can impact the way we perceive different people and situations without being fully aware that we are bringing biases to our judgment. The images the video employs to "choreograph" unconscious bias are a photograph of the judge who is the first speaker in the video (Video at 3:32); a man riding a motorcycle (Video at 3:59); a list of primary colors (Video at 4:40); resumes labeled John and Jane Doe (Video at 6:35); and a horse (Video at 7:39). Race is mentioned a total of *three* times in the eleven minutes.

Simply, the video explains how unconscious bias can negatively impact the way that jurors look at witnesses for either side, the defendant, the attorneys, and the Judge presiding over the case, in addition to all of the events described in the testimony provided at trial. The video correctly instructs all such jurors to consider the assumptions they bring to the table, and be aware of them.

## Other Jurisdictions Routinely Show the Unconscious Bias Video

Since releasing this innovative video, numerous district courts around the country have adopted it. *See, e.g.*, U.S. District Court for the Northern District of California, *Unconscious Bias Video for Potential Jurors*, https://www.cand.uscourts.gov/attorneys/unconscious-bias-video-for-potential-jurors/ (last visited Feb. 19, 2020); Ex. C, *United States v. Sampson*, 1:18-cr-02029, Order Following Pretrial Conference (E.D. Wash. Mar. 15 2019) (Bastian, J.); Ex. D,

14

*United States v. Reed*, 17-CR-253, Order Re Intent to Play Unconscious Bias Video

(D. Minn. Jan. 30, 2019) (Brasel, J.); Ex. E, *United States v. Lawrence*, 18-CR-527

(E.D.N.Y. Nov. 6, 2019) (Bloom, M.J.); Ex. F, *United States v. Lawrence*, 18-CR-

527 (E.D.N.Y. Nov. 12, 2019) (Weinstein, J.). Undersigned counsel is also aware

that the U.S. District Court for the District of Oregon is in the process of creating its

own video to show jurors about unconscious bias.[8]

### The Government's Opposition to Training Jurors in Unconscious Bias and Skepticism of the Research Are Contrary to the Policy of the Department of Justice

Mr. Ramadan anticipates that the government will attempt to question the

validity of implicit and unconscious bias. Such questioning necessitates a level of

intentional blindness that contributes to the racial disparities permeating the criminal

justice system.

First and foremost, research validating the problem of implicit bias has been

adopted as valid by the United States Department of Justice. Information about

research into implicit bias is available to the public on the DOJ's website as of

February 20, 2020.

- U.S. Dep't of Justice, *Department of Justice Announces New Department-Wide Implicit Bias Training for Personnel, Press*

---

8 Undersigned counsel has received information from federal defenders in the District of Montana, District of Idaho, and District of Minnesota that judges in those districts routinely show the video to potential jurors.

*Release Number 16-747* (June 27, 2016), https://www.justice.gov/opa/pr/department-justice-announces-new-department-wide-implicit-bias-training-personnel (directing that 28,000 DOJ employees will be trained because "the research is clear that most people experience some degree of unconscious bias, and that the effects of that bias can be counted by acknowledging its existence and utilizing response strategies.").

- United States Department of Justice, *Memorandum for All Department Law Enforcement Agents and Prosecutors* (June 27, 2016), https://www.justice.gov/opa/file/871116/download ("Over the past several decades, social science research has revealed that we all experience some degree of 'implicit bias,' the unconscious and often subtle associations we make between groups of people and stereotypes about those groups.").

- United States Department of Justice, *FAQs on Implicit Bias* (June 27, 2016), https://www.justice.gov/opa/file/871121/download ("As the research shows, bias starts with our automatic tendency to categorize individuals: we employ mental shortcuts to make sense of the world and this process can involve categorizing people we do not know according to group membership.").

Unconscious bias is real. The research behind it is decades-old, rigorously controlled, scientific research that is universally accepted across the scientific community and the federal courts, which is why it has been adopted by the United States Department of Justice. *See, e.g.*, *Texas Dept. of House. and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2512 (2015) (recognizing "unconscious prejudices" in disparate treatment in housing discrimination); American Bar Association, *Implicit Bias Initiative*, https://www.americanbar.org/groups/litigation

16

/initiatives/task-force-implicit-bias/ (last visited Feb. 20, 2020). Implicit bias has been the subject of training at federal courthouses, federal defender offices, prosecution offices (including the Department of Justice, as shown), and corporate workplaces. It is taught at universities and law schools across the country.

### The Unconscious Bias Video is Not Duplicative or Confusing

Mr. Ramadan further anticipates that the Government will maintain that instructions on implicit bias are unnecessary and confusing, in light of other mechanisms in place like the "Call to Serve" video and jury instructions.

The "Call to Serve" video does not address unconscious bias. The "Call to Serve" video created by the Federal Judicial Center offers a historical overview of the right to a jury in the United States, emphasizes the importance of jury service, outlines selection and procedures, and admonishes jurors not to conduct independent research, to discuss the case with anyone—including posts on social media. But the "Call to Serve" video contains no discussion of unconscious bias.

The Sixth Circuit Pattern Jury Instructions do not address unconscious bias either. Instead, they correctly inform jurors not to let bias, sympathy, or prejudice influence their decisions. But without information about unconscious bias, jurors may fail to understand how these unconscious biases can affect their view of the evidence. Again, the problem with unconscious biases is that everyone has them and

17

may not know it. The unconscious bias video forces jurors to consider whether they harbor these biases when they may not otherwise do so.

Finally, it is salient to note that jurors can analyze and confront biases they hold while also utilizing common sense when assessing the evidence. The two concepts are not antithetical. Bias, specifically racial bias is not rational, it relies upon historically grounded myths and the effects of centuries of systematic white supremacy. One can assess evidence objectively, while also recognizing that biases may permeate the lens through which they perceive evidence and credibility.

18

## <u>CONCLUSION</u>

For the aforementioned reasons, this Court should permit defense counsel and the government's lawyers to conduct voir dire for a reasonable period of time on the issue of implicit bias with the assembled group of potential jurors. Further, this court should also allow for the showing of the implicit bias video from the Western District of Washington prior to said attorney led voir dire.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**
**EASTERN DISTRICT OF MICHIGAN**

s/Andrew Densemo
ANDREW DENSEMO (P37583)
Attorney for Defendant
613 Abbott, Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5829
E-mail: andrew_densemo@fd.org

Dated:  June 4, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,          CR. NO. 17-20595

v.

                                HON. VICTORIA A. ROBERTS

YOUSEF RAMADAN,

                  Defendant.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Hank Moon and Douglas Salzenstein**
211 W. Fort Street
Ste. 2001
Detroit, MI 48226

                  **FEDERAL COMMUNITY DEFENDER**
                  **EASTERN DISTRICT OF MICHIGAN**

                  s/Andrew Densemo
                  ANDREW DENSEMO (P37583)
                  Attorney for Defendant
                  613 Abbott, 5th Floor
                  Detroit, Michigan 48226
                  Phone: (313) 967-5829
                  E-mail: andrew_densemo@fd.org

20