UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Case No. 17-20595
       HON. VICTORIA A. ROBERTS

YOUSEF MOHAMMAD RAMADAN,

       Defendant.
_____/

**<u>ORDER: (1) DENYING RAMADAN'S MOTION IN LIMINE [ECF No. 236] AND (2) GRANTING RAMADAN'S MOTION FOR ATTORNEY CONDUCTED VOIR DIRE AND SHOWING OF UNCONSCIOUS BIAS VIDEO [ECF No. 237]</u>**

### I.    INTRODUCTION

The United States charged Yousef Ramadan ("Ramadan") with possession of two firearms with obliterated serial numbers, possession of a stolen firearm, and possession of an unregistered silencer. Airport security agents discovered these items while scanning Ramadan's checked baggage. The baggage examination also revealed that his family's luggage contained export-controlled body armor; other paramilitary gear; and numerous electronic devices depicting, among other things, over 1500 pictures and videos of ISIS propaganda, pictures and videos of a suspected

1

homemade pipe bomb, and pictures of Ramadan posing with weapons while making the ISIS hand gesture.

Before the Court are two Ramadan motions. The Court **DENIES** Ramadan's motion in limine to inspect grand jury transcripts. The Court **GRANTS** Ramadan's motion for attorney conducted voir dire and showing of unconscious bias video.

## II. STANDARD OF REVIEW

District courts have broad discretion over matters involving the admissibility of evidence at trial. *U.S. v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). In determining the admissibility of evidence, the Court must first decide whether the evidence is relevant. Under the Federal Rules of Evidence, relevant evidence is that which has "any tendency to make a fact more probable or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

Under Fed. R. Evid. 402, all relevant evidence is admissible, unless a statute or rule provides otherwise. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Further, "the Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

### III. DISCUSSION

**A. Motion in Limine**

This is Ramadan's second request for inspection of grand jury transcripts. *See* ECF No. 134. Judge Battani denied his first request. *See* ECF No. 140. Still, Ramadan requests that the Court permit him to inspect the minutes of the grand jury transcripts pursuant to Federal Rules of Criminal Procedures 6(e)(3)(E)(i)-(ii). This rule allows the Court to order disclosure of grand jury testimony "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

The decision whether to disclose grand jury testimony or other material under Fed. R. Crim P. 6(e)(3)(E) is left to the discretion of the Court. *United States v. Short*, 671 F.2d 178, 184 (6th Cir. 1982). That discretion is not absolute. *Id*. Disclosure is proper only if the party seeking disclosure shows a "compelling necessity" for breaking the "indispensable secrecy of grand jury proceedings." *Id*. (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-82 (1958)). To demonstrate a "compelling necessity," a party

3

must show a "particularized need" for the disclosure of grand jury records. *Id*. (quoting *Procter & Gamble*, 356 U.S. at 683). Additionally, "a presumption of regularity . . . attaches to [grand jury] proceedings[,] and [a] defendant[] ha[s] a difficult burden to prove any irregularity." *United States v. Battista*, 646 F.2d 237, 242 (6th Cir. 1981).

Ramadan says inspection of the grand jury transcripts are necessary and material to the preparation of his defense for the following reasons. Ramadan:

- Suspects the transcripts will reveal whether the evidence tag numbers assigned to the indicted firearm are consistent with the evidence that will be presented at trial;

- Claims the transcripts will prove the government's knowledge of evidence destruction and whether agents testified to an unbroken chain of custody and preservation of the evidence;

- Says the transcripts are necessary to impeach the deposition of Philip Prather. Ramadan cleaned Prather's home as an employee of Star Carpet Cleaning. Ramadan possessed a Jennings firearm stolen from Prather's residence. He suspects the government will move for admission of Prather's deposition testimony at trial in lieu of his live testimony; and

- Says the transcripts are necessary to determine whether evidence unrelated to the crimes charged was presented to the grand jury and to determine whether agents testified that Ramadan knew of, possessed, or controlled the firearm alleged in the indictment.

4

None of the given reasons demonstrates a "compelling necessity" to allow inspection of grand jury transcripts.

Ramadan fails to demonstrate a particularized need for the grand jury transcripts to support a demand for the appearance of certain government witnesses. As the government points out, "nearly all of the law enforcement witnesses involved in this case" testified during the evidentiary hearing that extended between January 30 and September 12, 2018. *See* ECF No. 110. Ramadan has access to thousands of pages of discovery to determine whether government witnesses are necessary at trial.

Similarly, Ramadan fails to demonstrate a particularized need for the transcripts for impeachment purposes. This is Ramadan's second request that the Court permit him to inspect grand jury transcripts to impeach Prather. Judge Batani ruled on this request in her August 12 order. *See* ECF No. 140. Ramadan is bound by that decision; the Court will not rehash matters settled early in this case. *Burley v. Gagacki*, 834 F.3D 606, 618 (6th Cir. 2016) ("Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." (citation omitted)).

Testifying witness statements, including those made to the grand jury, will be available to Ramadan pursuant to the Jencks Act. The government says it will produce grand jury Jencks material to Ramadan two weeks prior to trial.

Ramadan's remaining reasons are speculative. The "mere speculation of irregularity is not enough to entitle the defendant to disclosure of grand jury material." *United States v. Hart*, 513 F. Supp. 657, 658 (D. Pa. 1981). Ramadan's generalized claims that he needs to inspect the grand jury transcripts to prepare for trial are insufficient to warrant disclosure of the transcripts. *See United States v. Johnson*, 414 F.2d 29 (6th Cir. 1969).

### B. Motion for Attorney Conducted Voir Dire and Showing of Unconscious Bias Video

Ramadan requests that the Court allow attorney conducted voir dire on the issue of unconscious bias. He asks the Court to show an unconscious bias video commissioned by a committee of judges and attorneys in the U.S. District Court for the Western District of Washington before voir dire. The Western District of Washington shows the video to each potential juror prior to jury selection in all cases. The video explains how unconscious bias can negatively impact perception. It instructs jurors to consider the assumptions

they bring and asks them to be aware of those assumptions throughout the trial.

### 1. The Court will allow attorney conducted voir dire

The parties reached an agreement regarding attorney conducted voir dire. They will submit a joint list of proposed jury questions regarding implicit bias to the Court along with objections and the basis for each objection by July 12, 2021. The Court will rule on these objections prior to trial.

### 2. The Court will show the unconscious bias video in the courtroom prior to the attorney conducted voir dire

The parties also agreed that the jurors should see the unconscious bias video. Apparently, the video is being shown in several districts. *See, e.g.,* U.S. District Court for the Northern District of California, *Unconscious Bias Video for Potential Jurors*, https://www.cand.uscourts.gov/attorneys/unconscious-bias-videoforpotential-jurors/ (last visited July 9, 2021); *United States v. Sampson*, 1:18-cr-02029, Order Following Pretrial Conference (E.D. Wash. Mar. 15 2019); *United States v. Reed*, 17-CR-253, Order Re Intent to Play Unconscious Bias Video (D. Minn. Jan. 30, 2019).

But the parties disagree on the venue in which it should be shown. Ramadan asks the Court to show the video in the courtroom prior to the attorney conducted voir dire; the government asks that the clerk's office show the video to the entire venire in the jury room as part of jury orientation and prior to jury selection. The government argues that the courtroom is an improper place to show the video because it "is an educational tool meant to help create an impartial jury—it is not evidence in any particular case." Importantly, the government does recognize the video as an educational tool.

It is entirely proper to show the video in the courtroom. Jurors are not eliminated from jury service based on anything that occurs during orientation in the clerk' office. That location is merely the beginning of an educational process that continues in the courtroom. The purpose of voir dire is to expose possible biases, both known and unknown, on the part of prospective jurors. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising peremptory challenges. *Id*.

The Court agrees that it would be more ideal to show the video to the venire as part of orientation in the clerk's office. However, the Court does not

have the authority to require that the video be shown to all jurors during orientation. Continuing orientation in the courtroom makes this a legitimate request.

The bench discussed the matter of showing the video to the entire venire. It has not reached a decision. If, prior to trial, the bench decides that the clerk's office may show the video to the entire venire as part of orientation, the Court will agree. Otherwise, the Court will show the unconscious bias video in the courtroom prior to attorney conducted voir dire.

## IV. CONCLUSION

The Court **DENIES** Ramadan's motion in limine for inspection of the grand jury transcripts and **GRANTS** his motion for attorney conducted voir dire and showing of the unconscious bias video.

**ORDERED.**

s/ Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Date: July 9, 2021