UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

                                 Case No. 17-20595

v.

                                 Hon. Victoria A. Roberts

Yousef Mohammad Ramadan,

        Defendant.


**Government's Response Opposing Ramadan's Motion for Temporary Modification of Bond Condition to Allow Travel to Palestine [250]**

Defendant Yousef Ramadan asks this Court to allow his international travel to Palestine to attend to his son's surgery on July 30, 2021. ECF No. 250. For the reasons set forth in its brief, the government opposes the motion and respectfully requests that the Court deny the motion.

                        Respectfully submitted,

                        SAIMA S. MOHSIN
                        Acting United States Attorney

                        *s/Jonathan Goulding*
                        Jonathan Goulding (MA 664444)
                        Assistant United States Attorney
                        211 W. Fort Street, Suite 2001
                        Detroit, MI  48226
                        (313) 226-9742

Date: July 23, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

                                    Case No. 17-20595

v.

                                    Hon. Victoria A. Roberts

Yousef Mohammad Ramadan,

        Defendant.

## Government's Brief in Support of its Response Opposing Ramadan's Motion for Temporary Modification of Bond Condition to Allow Travel to Palestine [250]

### I.    Introduction

On July 21, 2021—nine days before his son's scheduled surgery—Ramadan filed his motion to allow his travel to Palestine to attend the same. ECF No. 250. A partially illegible handwritten note on a prescription pad, authored by Dr. Raouf Azar, is the sole document tendered in support of the motion, and it states that the surgery is to be on July 30, 2021. ECF No. 251, Exh. 1. Absent from Ramadan's motion and the doctor's note is information about the seriousness of the condition, the nature of the surgery to be performed, and an explanation for why travel has been requested on such short notice or why Ramadan's presence is necessary in Palestine.

Further, Ramadan is indisputably a risk of flight, as this Court has twice held. On January 15, 2021, the Court granted Ramadan's third request for release. In doing so, the Court gave no indication that it had changed its view of the Defendant's risk of flight, and the Court imposed a restrictive set of conditions governing the Defendant's conduct while out on bond. These included home incarceration[1], a tether, travel restrictions, and the surrender of all travel documents. Those conditions will have no hold upon Ramadan while he is overseas, and Pretrial Services will have no ability to monitor him. With dual citizenship and his family already overseas, Ramadan will have every incentive to remain in Palestine if the Court permits his travel. And the United States has no extradition treaty with Palestine. If Ramadan does abscond, the government will have no recourse.

In short, the Court cannot allow him to travel overseas and reasonably expect that he will return for his trial, and, accordingly, the government respectfully requests that the Court deny his motion.

## II.    Background

On August 15, 2017, Ramadan and his family took twenty-one pieces of luggage to the Detroit Metropolitan Airport and bought one-way tickets to Jordan. *United States v. Ramadan*, 458 F. Supp. 3d 657, 659 (E.D. Mich. 2020). They were

---

[1] The Court modified the home incarceration condition to, ultimately, stand-alone monitoring. *See* ECF Nos. 229, 231, 233.

in route to resettle in Bethlehem, a city in Palestine. An outbound baggage inspection revealed that the family's bags contained export-controlled body armor; officers also found a Taser pepper spray, gun magazines and holsters, a rifle scope, tactical knives, a gas mask, a drone, and other tactical gear. *Id*. at 659-660. Also in Ramadan's bags and on his person were several electronic devices that contained, among other things, "over 1500 pictures and videos of violent ISIS propaganda, photos and videos of a suspected homemade pipe bomb, and pictures of Ramadan posing with weapons while making an ISIS hand gesture." *Id*. at 660.

When interviewed at the airport about the items found in his luggage and other topics, Ramadan provided false information about his gun ownership and the location of those guns. During this litigation, Ramadan has repeatedly provided false information to the government and to the Court. While in pretrial detention, he was found with escape paraphernalia in his cell and provided two implausible accounts to explain himself. He also provided false information about his health condition in an attempt to secure his release.

Ramadan initially consented to detention, ECF No. 9, PageID.24, but later moved for release on bond in the district court. ECF No. 79. The government opposed, and after detailed briefing and a lengthy hearing, Judge Battani determined by clear and convincing evidence that Ramadan was both a danger to the community and a flight risk. ECF No. 98, PageID.1974. On April 13, 2020, Ramadan filed an

emergency motion for temporary release under 18 U.S.C. § 3142(i), citing the COVID-19 pandemic.  ECF No. 181, PageID.2721.  Ramadan claimed that he was "at a greater risk of death because of his history of chronic asthma and diabetes".  *Id*. at 2731.  At another detention hearing, the Court denied this second request for release.  The Court found that Ramadan lied about his medical conditions and fell far short of establishing eligibility for release. *Ramadan*, 458 F.Supp. 3d. at 664. The Court also stated that "the record is replete with instances of lies, deceitful activity and general untrustworthiness, [and] that Ramadan has no credibility and cannot be trusted." *Id*.

Ultimately, Ramadan sought release on bond a third time, ECF No. 215, PageID.3593, and on January 15, 2021, the Court granted his request.  ECF No. 223, PageID.3655.  However, the Court did not suggest that there was a change in circumstances mitigating Ramadan's dangerousness, his risk of flight, or his overall trustworthiness.  Rather, the grounds for the Court's decision to release the Defendant *notwithstanding those issues* were the COVID-19 pandemic, the Defendant's extended pretrial detention, and the need to assist in preparing his defense.  *See* 01/15/2021 Tr. 42-48, ECF No. 223, PageID.3697-3703.

Although Ramadan did not leave the United States on January 15, 2017 as he intended, his wife and children did.  The government believes they have remained overseas since, as there is no record of his wife reentering the United States.

4

### III.   Argument

#### A. Ramadan's motion is vague and provides the Court with insufficient information.

Ramadan has made an extraordinary request for international travel on the eve of trial.  While the Court must consider a variety of factors when determining whether to modify the conditions of his bond—flight risk and dangerousness among them—the reason for the requested travel is certainly one of those factors.  However, the motion does not provide basic information that would allow the Court to understand his son's situation.  The motion and the attached doctor's note do not explain the nature of his son's condition.  Similarly, no information is provided about whether the surgery is major or minor, what the risks of complications may be, or the prognosis for a successful recovery.  It isn't even clear from the doctor's note what the son's condition is. [2] Also missing from the motion is a statement from Ramadan's wife or other family members explaining why Ramadan needs to be present.  For example, there is no suggestion that other family members cannot provide care for Ramadan's son.  If there's any inference to be made from the paucity

---

2. Although the government does not have confidence in its ability to decipher or interpret the doctor's handwriting, the son's medical condition might be "Varicocele", and, if that is true, it appears to be a not uncommon condition that is sometimes treated by relatively minor surgery.  *See* ECF No. 251, Mot. at Exh. 1; *see also* Mayo Clinic Overview.

of information provided to the Court, it is that Ramadan's son does not have a serious or life-threatening medical condition.

As far as the government is aware, Ramadan has not been with his son during the litigation of this case. Ramadan's desire to be present, particularly now, is understandable. But pretrial defendants—whether detained or on bond with conditions—must often miss events that the bonds of affection would ordinarily compel them to attend, a child's surgery overseas certainly being among them. And Ramadan does not explain why he waited until nine days before the surgery to file his motion, necessitating a rushed briefing schedule and adjudication. Although the doctor's note is dated July 17, 2021, there is no indication that the surgery was recently scheduled, or that the chosen date of July 30, 2021 is materially important. It is at least plausible that the surgery could be delayed until Ramadan has concluded his case if it is necessary that Ramadan be present, but that is another issue not unaddressed by his motion.

**B. Ramadan is a risk of flight and untrustworthy.**

Ramadan's motion for modification of his bond conditions does not address the Court's prior and repeated findings that he is a flight risk and that he cannot be trusted. Ramadan has (1) misrepresented his medical condition to the Court ("Even though all of his medical records demonstrated that he does not have diabetes or asthma, Ramada misrepresented to the Court that he had those medical

6

conditions…" *Ramadan*, 458 F.Supp. 3d at 664), (2) lied about escape paraphernalia in his cell ("It appears Ramadan has difficulty keeping his lies straight. While neither of Ramadan's stories seems even remotely plausible, there is no doubt that at least one of his stories is a complete fabrication of the truth." *Id.*), and (3) "has no credibility" because "the record is replete with instances of lies, deceitful activity and general untrustworthiness." *Id*.

The Court expressly noted Ramadan's repeated "deceitful and fraudulent behavior" in its May 2, 2020 decision that no set of conditions would assure the safety of the community and his appearance. *Id*. Although the Court later released Ramadan on January 15, 2021, the Court did not withdraw from its earlier assessment that Ramadan's could not be trusted and presented a risk of flight. It was only the rare confluence of several factors brought about by a once-in-a-lifetime pandemic—a lengthy pretrial detention approaching a guideline sentence, the potential risk of contracting a serious case of COVID-19, and Ramadan's stated difficulties preparing for his defense—that formed the basis for the Court's decision to release Ramadan notwithstanding his risk of flight. *See* 01/15/2021 Tr. 42-48, ECF No. 223, PageID.3697-3703.

And it should be noted that Ramadan's overall lack of trustworthiness predates his behavior in this case. He obtained social security benefits during an approximately two-year period starting in 2011 by concealing his children's

overseas presence from the Social Security Administration.  He was prosecuted for that offense, admitted that he accepted government funds that he was not entitled to, and placed on probation for that offense.  At the same time Ramadan was taking funds to which he was not entitled, he was pursuing United States' citizenship through naturalization.  As part of that process, he falsely told the naturalization examiner that he had never committed a crime for which he had not been arrested knowing full well that was not true.

In short, Ramadan's behavior during past decade reveals a persistent disregard for the rule of law and an overall lack of trustworthiness that has been on display throughout this case.  Against this backdrop, Ramadan requests that the Court place an extraordinary amount of trust in him despite giving the Court good reason to refrain from doing so.

### C. If allowed to travel internationally, Ramadan will have every incentive to remain overseas.

Ramadan's overseas ties and foreign citizenship, coupled with his family's presence overseas, will be a strong draw for Ramadan to remain overseas beyond the reach of the law and with his family.  When Ramadan was stopped at the airport on August 15, 2017, he and his family had purchased one-way tickets to relocate their family to Palestine.  His wife reported that this was because they had nothing but legal troubles and bad luck in the preceding years.  Since that day, Ramadan's ties to the United States have only weakened and his "bad luck" increased.

Specifically, his wife and minor children have resettled overseas, and he is today facing pending criminal charges.  It is an understatement to say that Ramadan has far fewer reasons to return to the United States and face prosecution today than he did on the day he last tried to leave the United States permanently.

Although Ramadan suggests that he will return to the United States to "continue to fight to remain a citizen" of the United States, the reality is that there is no fight to be had.  There is no present civil or criminal action that could result in Ramadan losing his naturalized citizenship.  Any conjecture about future actions is just speculation, as is the suggestion that Ramadan would need to be present in the United States to litigate citizenship-related issues should they ever arise.  Indeed, it is far more likely that the prospect of potential litigation in the future is an additional reason for Ramadan to remain overseas if the Court authorizes his travel.

### D. The Court and the government will have no recourse if Ramadan absconds.

The United States does not have an extradition treaty with Palestine.  *See* State Department, Treaties in Force.  Because of this and because Pretrial Services will be unable to monitor Ramadan's movements and behavior while overseas, the Court will have no recourse if Ramadan predictably chooses to remain in Palestine with his family.

## IV.    Conclusion

Respectfully, for the foregoing reasons, the Court should deny Ramadan's

motion to modify his conditions of bond.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney


*s/Jonathan Goulding*
Jonathan Goulding (MA 664444)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9742

Date: July 23, 2021

## Certificate of Service

I hereby certify that, on July 23, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide a copy of such filing to the attorney of record.

*s/Jonathan Goulding*
Jonathan Goulding (MA 664444)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9742