UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,           CR. NO. 17-20595

v.                                 HON. VICTORIA A. ROBERTS

YOUSEF M. RAMADAN,

        Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES Yousef Ramadan, by counsel, and submits the following sentencing memorandum supporting his request for a sentence of time served.

**I.**    **OBJECTIONS TO THE PRESENTENCE REPORT**

The probation department prepared a pre-sentence report (PSR). The defense filed objections, and the government filed responses. The government also included its responses in its sentencing memorandum to the Court. This memorandum will reiterate defense counsel's objections to the PSR.

1

### A.     Inclusion of In-Custody Conduct

Mr. Ramadan objects to paragraph 20.  This paragraph contains information about Mr. Ramadan's alleged conduct while in custody. This information should be excised from the report.  Defense counsel cannot recall this type of information making its way into a pre-sentence report with any regularity. In addition, the BOP's administrative procedures demand little in the way of due process, attorney representation, or burden of proof.  Therefore, including the information regarding Mr. Ramadan's alleged conduct while in custody presents an incomplete, and possibly erroneous, characterization of his conduct at the detention center.  We do not know the circumstances surrounding each infraction. Mr. Ramadan could have been well within his right to disobey an order that jeopardized his health and safety or violated his religious beliefs.  Failure to obey a command may have generated another sanction for disruptive conduct and interfering with taking count.  We don't know the circumstances and we don't know what procedural safeguards were in place to protect Mr. Ramadan from unwarranted determinations and sanctions.  Because this information rarely is included in PSRs of other pre-trial detainees, it should not be included in Mr. Ramadan's.

## B. The Offense Conduct Description

Mr. Ramadan objects to the description of the offense conduct, which is entirely the government's subjective view of the facts. The offense conduct is not based on recorded conversations with Mr. Ramadan. It rests on the memory of the agents and their interpretation of statements made by Mr. Ramadan. For example, in paragraph 24, the agent's claim that Mr. Ramadan could not give an answer and appeared nervous is completely subjective. Mr. Ramadan provided an answer to the questions asked; however, his interrogators did not like the answers he gave. Thus, to bolster suspicions about Mr. Ramadan's "activities", agents make self-serving claims that he appeared nervous. They do this without mentioning he was interrogated for several hours by multiple agents in a hostile environment. We object to the descriptions of the offense conduct given to the probation department by the United States Department of Justice, the FBI, Homeland Security, and contained in the investigation reports.

Mr. Ramadan objects to paragraph 25, for similar reasons. This summary substantially mis-characterizes what Mr. Ramadan said to the agents regarding the Caliphate, ISIS, pipe bombs, and his possession of firearms.

3

Additionally, Mr. Ramadan objects to paragraphs 26, 28 and 29 to preserve his argument for the record that the fuel filter is not a firearm silencer.

### C. Adjustment for Obstruction of Justice, USSG 3C1.1

Mr. Ramadan objects to the assertion in paragraph 31 that he was dishonest with the Court on multiple occasions. Mr. Ramadan's attorneys attempted to discredit the case agents at the suppression hearing, and we were within our right to do so, given their attempts to justify what we believed to be an unconstitutional search and interrogation. Mr. Ramadan testified to what took place during his interrogation to the best of his recollection. Much of the testimony, on both sides, had little if anything to do with his possession of firearms in an Ypsilanti storage locker. Mr. Ramadan testified that the agents violated his constitutional rights during the interrogation by refusing to allow him to speak to an attorney, assaulting him and calling him derogatory names. He also testified that he didn't make some statements the agents claimed he made or say things in the way the agents claimed he did. The agents testified they didn't assault him, call him derogatory names or misrepresent his statements to them. The agents also testified they didn't believe Mr. Ramadan had the right to have an attorney present during questions and that *Miranda* warnings were unnecessary since they were questioning him at an international border. There

was no divergence in testimony between Mr. Ramadan and the case agents regarding the firearms or the fuel filter, the subject of the investigation and charges. It should be borne in mind that different people often remember events differently. This is especially true for someone like Mr. Ramadan who has documented and verifiable memory loss issues. And Mr. Ramadan was interrogated for over 12 hours by multiple federal agencies under very stressful circumstances.

Judge Battani did not find the agents' testimony to be more credible as to any specific issue. She found that overall she credited the agents' version of the interrogation more than Mr. Ramadan's. Judges frequently find that a law enforcement officer's testimony is more credible than a defendant's testimony. This credibility determination does not automatically trigger an enhancement for obstruction of justice. Taking such a position will deter accused individuals from exercising their constitutional right to testify in their own defense for fear of punished for it.

As to the second basis for the enhancement, detailed in paragraph 32, Mr. Ramadan's recollection is that an agent came to see him and attempted to speak with him at the detention center. This representation did not affect in any material way the investigation, prosecution, or sentencing. Mr. Ramadan's recollection may be faulty due to his medical history, but his representation of what he recalls can hardly

5

be considered a willful attempt to obstruct justice. Mr. Ramadan filed no pleadings regarding the attempt to question him. His attorneys made the prosecution and the Court aware and cautioned the government that no attempt should be made to contact our client regarding any subject whatsoever, even if it did not relate to the pending litigation. This is not obstruction of justice.

The government does not try to explain how the testimony of Mr. Ramadan at the suppression hearing or his statements about the unknown individual's attempt to interview him materially undermined the investigation, prosecution or sentencing, even if the statements could be proven false. The complained of conduct did not relate to the offense of conviction, any relevant conduct, or a closely related offense. Not one fact has been alleged which reflects that any statement made by Mr. Ramadan *willfully* obstructed, impeded or *willfully* attempted to obstruct or impede the investigation, prosecution, or sentencing.

### D. Enhancement for Obliterated Serial Number, USSG 2K2.1(b)(4)(B)

Mr. Ramadan objects to paragraph 38 because one offense of conviction, Count One, requires that the firearm have an obliterated serial number. Assessing a four-level enhancement because the firearm had an obliterated serial number is double counting and the enhancement should not be applied.

### E. Offender Characteristics

Paragraph 57 contains erroneous information about Mr. Ramadan's history of conflict with his wife and her family, and Mr. Ramadan objects to its inclusion in the PSR. Jeanine Ramadan had formal charges brought against her for an assault on Mr. Ramadan. Mr. Ramadan did not strike his wife with a closed fist. Mr. Ramadan never threatened his mother-in-law or asked her to intervene in his marriage. Mr. Ramadan's mother in law has never liked him, has made malicious claims to law enforcement about him, and once assaulted him with her walking stick. Mr. Ramadan didn't press charges.

## II. CONSIDERATION OF 3553(A) FACTORS

It has been nearly five years since I first met Yousef Ramadan. When I was assigned to his case, it was treated as a terrorism case by the prosecution and the media. The odd thing was there was no evidence of terrorism. Yousef had no affiliation with any terrorist groups or history of advocacy of violence.

Yousef was viewed as a terrorist because it was easy to label him as such. The predispositions and prejudices prevalent in the United States against people from the Middle East in general and Muslims in particular, only added to the ease with which his case gained notoriety. Based on tactical gear, war photos, and his religion, Yousef

7

Ramadan was designated a terror suspect by the prosecution who fed this erroneous information to the media -- a media all too eager to vilify another Muslim as a terrorist without evidence or proof. The government -- despite charging Yousef only with possession of two vintage firearms and a $15 fuel filter it claimed was a silencer --did not handle Yousef's gun case like an ordinary gun case. Yousef spent nearly four years in in pretrial detention before finally being released on bond. This is because the government was very persuasive in its arguments that he was a dangerous terrorist who couldn't be trusted, unlike the typical gun case defendant. Their arguments ignored that Yousef, unlike most gun case defendants, did not have a prior felony conviction. He had never been convicted of a violent crime and had never served a custodial sentence of any kind. A lot of things about Yousef were not considered by the government because they were laser focused on the tactical gear, the war photos, and his religion.

In its sentencing memorandum the government urges the Court to sentence Yousef to 78 months in part because of what they perceive as his "real" political beliefs. It maintains those "real" beliefs warrant a sentence at the high end of the guideline range. Freedom of speech and freedom of religion are cornerstones of our democracy. Remarkably, a branch of our government advocates here to limit those freedoms and punish an individual for their thoughts and religion. Despite the efforts

8

Case 2:17-cr-20595-VAR-EAS   ECF No. 293, PageID.4355   Filed 01/21/22   Page 9 of 17

by the defense to deal with Yousef's prosecution as a run of the mill gun case, the predilections and biases of this prosecution have kept the focus on Yousef's ethnicity and religious beliefs. The government would have introduced these theories during Yousef's trial, but for a stern warning from the Court that such provocations could result in a mistrial.

    Now these biases have resurfaced at the sentencing phase.  The government may argue otherwise, but what is to be made of a position which maintains that some alleged support for the Caliphate is a basis for the highest sentence authorized by the guideline range.  An argument as offensive to our constitutional scheme as this one, must be unequivocally rejected.  Otherwise it can and will be used as springboard to even more dangerous and perniciousness arguments that erode the constitutional rights enjoyed by everyone in America, especially ethnic minorities within the U.S. who have historically been subjected to unequal treatment within our society. Not too long ago, groups and individuals like the Black Panther Party, SNCC, the Chicano Movement, United Farm Workers, The Nation of Islam, El-Haj Malik El-Shabazz, Huey Newton, Fred Hampton, Eldridge Clever and many others were classified as terrorists by our government due to the positions they took against a political and socioeconomic system they believed to be exploitative, racist, and anti-ethical to human growth and development.  There can be no acceptance in the United

9

States of punishment based on someone's religion or political beliefs, even if that belief calls for the death of every man, woman, and child. America' strength is its ability to withstand such hateful animus and to not surrender to it. That strength is manifested in our constitution, the amendments to it, and the Bill of Rights that support it. A sentence which offends the Bill of Rights or our constitutional scheme is a gift to those who would see our way of life destroyed and our democracy shattered.

The probation department, utilizing arguments the government provided, calculated a guideline range of 63 to 78 months. If this court were to sentence Yousef to 63 months' custody, he would serve 85% of that sentence, approximately 54 months. He has already served 41 months. Once the six months of halfway house placement is included, Yousef would have 7 months remaining to serve. If the court did not assess a two-level enhancement for obstruction of justice, the guideline range would be 51-63 months. A sentence at the low end of this range would mean that Yousef has already served more time than the sentence required. If the court imposed the sentence of 78 months, at 85%, minus time already served and six months halfway house, a year and a half would remain. If one year at the halfway house was given, 12 months would remain. The government asks the Court to return

10

Yousef to prison for a little over a year without indicating what that year would accomplish.

Early in this prosecution, the government offered Yousef a deal: renounce his citizenship, agree to deportation, and serve approximately 20 months in prison. Yousef said no. The offers changed over the years, but they nearly always involved Yousef's giving up his U.S. citizenship and agreeing to deportation. There were offers that involved not seeking an obstruction enhancement, just pleading to the firearms, three-year deals, and others. Yousef said no. Because he said no and went to trial, the prosecution seeks to impose a trial penalty in addition to the Caliphate penalty. The trial penalty has been an unspoken part of criminal trials for centuries. The government's efforts to enforce it here is understandable given the resources it expended over the past four years to prosecute a gun case.

The prosecution has once again delved into the Ramadan video archives and come up with videos of Yousef misbehaving. Yousef is seen many years ago pointing a firearm at a cute little dog, arguing with police officers, and pepper spraying a motorist who cursed at and threatened him. These events took place over five years ago. But again, the government has trotted them out as evidence of who Yousef is in present day. The government cannot come up with one recent act of bad conduct, so it is forced to rely on conduct that took place years ago. Years before

11

being detained in U.S. secondary inspection for 16 hours while his wife and children waited in terror for the nightmare to end. Years before being branded a terrorist, before any evidence was obtained. Years before serving four years in federal prison. Years before being sick with Covid-19 while in prison. Years before his father passed away and incarceration preventing him from attending the funeral. Years before not seeing his wife and children for four years. Years before being convicted of a felony for the first time. Years before being on house arrest and electronic monitoring. Years before having the FBI scare your employer to the point where you might lose your job. Years before a Google search of his name resulted in terror suspect.

Yousef is not the same person he was ten years ago. Too much has changed within and around him, despite the government's desire that he be the same foolish young man he once was. We do not mean to trivialize or dismiss instances of Yousef's past conduct by arguing that they took place or allegedly took place several years ago. We recognize that some of his actions may exemplify an aspect of Yousef's personality that the Court may desire to address when fashioning a sentence. Most, if not all, of the acts proffered by the government involve impulse control or anger management issues. These areas of concern can be addressed on supervision through anger management and cognitive behavior therapy, if the Court

finds it necessary. An additional 6 to 12 months in custody, however, is not an appropriate response to such behavioral issues. Incarceration is not a balm which will cure personality defects. We recognize the relevancy of the conduct the government raises, but the response it advocates – more prison – will not address the issues underlying its concerns.

Since January 2021, Yousef hasn't engaged in the conduct the government predicted that he would. In one year, he's gotten one traffic ticket. His conduct on bond has been impeccable. The Court has lessened restrictive bond conditions on all but one occasion. Yousef has repeatedly shown the Court he is well deserving of its trust. He obtained employment within days of being released from custody. He has maintained employment ever since. He has never tested positive for drugs or alcohol. He has never violated a condition of bond. He is supporting his family and has established his own residence. Yousef has shown that he is ready, willing, and able to live within the law. The government's efforts to cast him as an unrepentant, caliphate-loving troublemaker is nothing more than a desperate attempt to gloss over the remarkable progress he's made in getting back on his feet, supporting his family and living a law-abiding life.

The government has emptied the cupboard in its attempts to paint Yousef as a horrible parent, enemy of Israel, Michael Vick-like animal hater, lone gunman,

13

enemy of America and master manipulator. He is not the pale rider of the Apocalypse. Yousef Ramadan is just a guy. His parental decisions, personal decisions, religious and political beliefs are not static. They evolve with maturity, experience, and time. His religious beliefs do not justify a higher sentence. Simply because someone looks at violent heartbreaking images of war, doesn't mean that person is violent or supports the violence depicted. During the Vietnam war, certain images of violence motivated people to call for an end to the war. Viewing the depiction of such carnage is not indicative of anyone's propensity towards violence, including Yousef Ramadan's.

    Yousef has clearly demonstrated he can abide by supervisory conditions with no difficulty. He has shown that he can maintain employment, refrain from anti-social and criminal conduct, avoid illegal drug use, maintain contact with his pretrial officer, maintain a stable residence, obtain vocational training, (Yousef obtained his CDL over the past six months), and comply with the rules of supervision. He hasn't engaged in any violent or anti-government conduct. He hasn't even made a single statement critical of the U.S. government. Yousef comes from a solid law-abiding family. There is no need to incarcerate him for 6 to12 more months.

    Yousef Ramadan is in criminal history category I. He has no prior felony convictions. He has no convictions for violence of any kind. He is married and the

father of four children. He has been married for over 10 years. He has substantial ties to Michigan. He has a strong history of employment. He is educated and recently obtained a CDL license. He is employed and has a stable residence. He does not have a history of missed court appearances in his limited contact with law enforcement. Yousef has already served nearly four years in federal custody and contracted Covid-19 during his time in confinement. He came to the United States approximately 15 years ago. He became a U.S. citizen approximately 12 years ago. He does not have a history of mental instability or drug dependency. There are very few indicators of future dangerousness or anti-social conduct. Yousef has been on supervision for 13 months without a single violation.

The defense requests that Yousef be sentenced to time served. This sentence is sufficient but not greater than necessary to satisfy the goals of sentencing. It promotes respect for the law and sends a deterrent message, given the nearly four years Yousef spent in custody while he was still cloaked in the presumption of innocence. A period of supervised release following the time served sentence will continue to aid in the goals of sentencing. No additional benefit is gained by further incarceration as Mr. Ramadan has proven that he can conform his conduct within the bounds of the law and live a law-abiding life. Therefore, additional incarceration is unnecessary to achieve the goals of sentencing.

Based upon the foregoing, the defense respectfully request this Honorable Court impose a sentence of time served.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER
EASTERN DISTRICT OF MICHIGAN**


s/Andrew Densemo
ANDREW DENSEMO (P37583)
AMANDA N. BASHI
Attorneys for Yousef M. Ramadan
613 Abbott, Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5829
E-mail: andrew_densemo@fd.org

Dated: January 21, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,        CR. NO. 17-20595

v.

        HON. VICTORIA A. ROBERTS

YOUSEF M. RAMADAN,

        Defendant.
_____/

**CERTIFICATE OF SERVICE**

I, hereby certify that on January 21, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Doug Salzenstein and Jonathan Goulding
    Assistant United States Attorneys, United States Attorney's Office
    211 W. Lafayette, Ste. 2001, Detroit, MI  48226

and e-mailed a copy to:

    Kody R. Bellamy, United States Probation Officer
    kody_bellamy@miep.uscourts.gov

        **FEDERAL COMMUNITY DEFENDER**
        **EASTERN DISTRICT OF MICHIGAN**

        s/Andrew Densemo
        ANDREW DENSEMO (P37583)
        AMANDA N. BASHI
        Attorneys for Yousef M. Ramadan
        613 Abbott, Suite 500
        Detroit, Michigan 48226
        Phone: (313) 967-5829
        E-mail: andrew_densemo@fd.org

Dated: January 21, 2022