UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                CRIMINAL NO. 17-20595

v.                                HON. VICTORIA ROBERTS

YOUSEF RAMADAN,

        Defendant.
_____/

**United States' Response Opposing
the Defendant's Motion for Early Termination of Supervised Release**

Defendant, Yousef Ramadan, requests that the Court terminate his supervised release. Mr. Ramadan does not claim that supervised release has hindered him in any way. Quite to the contrary. Ramadan contends that he is thriving under court supervision, holding down a job, maintaining a stable residence, reporting as directed, completing counseling, remaining in compliance with his conditions of supervision and avoiding further arrests or convictions. ECF No. 319, PageID.5615-16. All of this is commendable. Indeed, the fact that Mr. Ramadan is working to better his life, so that he can finally become a permanent, law abiding, productive member of society, is important. But, simply doing what every defendant is supposed to do on supervised release is not a reason to terminate court supervision, particularly for someone like Mr. Ramadan who has a

1

long and documented history of manipulation, deceit, uncontrolled anger and outright cruelty, and who has favored the views of the Islamic State in Iraq and al-Sham (ISIS), a designated-terrorist-organization. As Judge Lawson recently explained, "full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release. In short, compliance is expected, not exceptional behavior" that would warrant early termination of supervised release. *United States v. McKinney*, Case No. 14-20698 (E.D. Mich. 2023) (ECF No. 274, PageID.1524).

    This is also a case in which Mr. Ramadan has already given a substantial break—a well-below guideline sentence. He now asks for a second break—early termination of supervised release—when, according to Mr. Ramadan, court supervision has not hindered his reintegration into society in any identifiable way. He complains (without any support or examples) that continued supervision will hinder his job prospects, his living arrangements and his ability to see his family—*see* ECF No. 319, PageID.5619—when supervision has hindered none of these things to date. Quite to the contrary, Ramadan admits that he is thriving at his current job and has had a stable residence for two years. And, Mr. Ramadan's wife and children are U.S. citizens. They are free visit Mr. Ramadan at any time (and could have done so any time during the last six years). The government respectfully requests, therefore, that the Court deny Mr. Ramadan's motion.

2

## BACKGROUND

In September 2021, a jury convicted Mr. Ramadan of unlawfully possessing: (1) a firearm with an obliterated serial number, (2) a stolen firearm (that also had an obliterated serial number), and (3) an unregistered firearm silencer.

Mr. Ramadan's crimes were serious and his history and characteristics showed a propensity for dangerousness and cruelty. First, his offenses were not merely "status" offenses. Instead, Ramadan personally stole at least one of the charged firearms, obliterated the weapon's serial number himself so it could not be traced, and personally manufactured a firearm silencer so he could, among other things, fire a pistol out of his apartment window (in a residential neighborhood) without being heard or caught.

The evidence presented by the government also unambiguously showed that, despite his protestations to the contrary, Ramadan has favored the views of the Islamic State in Iraq and al-Sham (ISIS), a designated-terrorist-organization, for many years. Even after he was detained, he scrawled graffiti at the Milan Detention Center that was translated to include "Islamic Caliphate." And, Ramadan's repeated claim that he did not support the "violent" side of ISIS was simply not believable given: (a) the military-type items he attempted to take with him to Israel; (b) the ISIS images and videos that he saved on his hard drives—many of which depicted ISIS's most violent acts (including beheadings, executions and

bombings); (c) the photographs of Ramadan posing with guns while making the very same ISIS hand gesture that ISIS fighters make on the battlefield; and (d) the photograph and videos that Ramadan recorded showing a pipe bomb at this home in Israel. Many of these images were presented to the Court during sentencing.

Ramadan has also exhibited a history of violence, anger issues, and outright cruelty. As the government showed during sentencing, videos saved to his hard drives showed Ramadan filming and organizing dog fighting—videos in which dogs are killed in the most cruel and inhumane manner while Ramadan and others laugh and treat the killings like sport. Other videos record multiple instances of road rage (one in which Ramadan pepper sprayed the other driver), hostile confrontations with police officers, and a confrontation with a parking attendant who Ramadan called a "white fuckin' asshole."

Mr. Ramadan's conduct also included a unique pattern of providing false information to the government and the Court. Your Honor outlined Mr. Ramadan's many lies and false statements, deeming him to be "entirely untrustworthy." ECF No. 190, PageID.3362. Ramadan's many lies to the Court cannot be ignored.

Your Honor ultimately sentenced Mr. Ramadan to time served, well under the advisory guideline range. ECF No. 299, PageID.4427.  Mr. Ramadan has served approximately 16 months of his 24-month term of supervised release. He now asks the Court for early termination of his supervised release.

## ARGUMENT

A court may "terminate a term of supervised release and discharge the defendant released at any time after expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

When considering whether to terminate a defendant's term of supervised release, the Court should consider several specifically identified sentencing factors set forth in 18 U.S.C. § 3553. *Id*. To grant early termination, "a district court must conclude that the early termination of supervised release is warranted by **both** the individual's conduct and also by the interests of justice." *United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (emphasis added). Factors include a defendant's "changed circumstances" such as "*exceptionally* good behavior by the defendant" that "render a previously imposed term . . . too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1996) (emphasis added).

Mr. Ramadan requests that the Court terminate his supervised release. ECF No. 319, PageID.5615. He claims that he is thriving under court supervision, holding down a job, maintaining a stable residence, reporting as directed, completing counseling, remaining in compliance with his conditions of supervision and avoiding any further arrests or convictions. ECF No. 319, PageID.5615-16.

Despite all of this, Mr. Ramadan asserts that continued supervision would be a burden because it is hindering his job prospects, his living arrangements and his ability to see his family. ECF No. 319, PageID.5619.

But, mere compliance with the terms of one's supervised release should be considered expected behavior, not exceptional behavior. In other words, merely doing the bare minimum of what should be expected of any defendant on supervised release—obtaining and maintaining a job, reporting as directed, remaining drug free, and not committing new criminal activity—should not be a basis for terminating supervised release, particularly for a defendant like Mr. Ramadan who has a history of lies, manipulation and outright deceit, who has clear anger issues, who has filmed his participation in acts of unimaginable cruelty (where he can be seen laughing and joking as dogs were killed in the most inhumane manner), and who has shown that the favors the views of ISIS, a designated terrorist organization. Mr. Ramadan's employment apparently involves driving out-of-state to perform towing services. This should give the Court great pause given Mr. Ramadan's documented history of road rage (which he videotaped on multiple occasions). The Court is also aware of an incident early on in Mr. Ramadan's tenure of supervised release when a firearm was stolen from Mr. Ramadan's former employer and then somehow miraculously reappeared when Mr. Ramadan found out he was suspected of stealing the firearm.

In the end, "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release . . ." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005). Compliance is expected, not exceptional behavior. *See United States v. McKinney*, Case No. 14-20698 (E.D. Mich. 2023) (ECF No. 274, PageID.1524). Therefore, "unblemished" post-conviction conduct is not "alone . . . sufficient reason to terminate the supervised release" because, if this were the case, "the exception would swallow the rule." *Id*. (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

Apparently recognizing this, Mr. Ramadan's motion offers several reasons why supervised release is necessary in his case; he claims supervised release is hindering his job prospects, his ability to obtain a place to live, and his ability to travel to Israel to visit his family. But, none of this is true—and, more important, Mr. Ramadan has provided the Court with no evidence to support these speculative claims. Mr. Ramadan's motion, for example, provides no evidence that supervised release has hindered his ability to obtain any specific job. Indeed, to the contrary, Mr. Ramadan alleges that he has been "consistently employed since he was released on bond in 2021" and has "obtained his CDL license." ECF No. 319, PageID.5619. And, Mr. Ramadan acknowledges that he "has [] maintained a stable residence since his release on bond in 2021" and has "been at his current address

7

for two years." *Id*. He provides absolutely no evidence or support that supervised release (as opposed to his status as a convicted felon) has somehow limited his housing options.

Finally, Mr. Ramadan claims that supervised release has somehow prevented him from seeing his wife and children for the past six years. Nothing could be further from the truth. Mr. Ramadan's wife and children are United States citizens. As a result, they could have traveled to the United States at any point during the last six years to visit Mr. Ramadan. Those chose not to. Not after his arrest. Not during his trial. Not after he was granted bond. Not while he is on supervised release. They can still do so today if they wanted to. And, as Mr. Ramadan acknowledges, he can always request permission to travel to Israel. ECF No. 319, PageID.5620. He simply claims that travel while on federal supervision would be "arduous and burdensome." No support or evidence offered as to why this would be arduous and burdensome. If approved, his supervision would certainly not hinder his ability to buy a plane ticket. It would only require him to coordinate his travel with his probation officer. That is not an onerous burden and is one that should be expected of someone, like Mr. Ramadan, on supervised release, who has a history of violence, lying, deceit and cruelty, who is a risk of danger to the public, and who openly favors the views of ISIS.

8

## CONCLUSION

The government respectfully requests that Mr. Ramadan's motion be denied.

                                        Respectfully submitted,

                                        DAWN N. ISON
                                        United States Attorney

                                        s/*Douglas C. Salzenstein*
                                        Douglas C. Salzenstein
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        (313) 226-9196
                                        doug.salzenstein@usdoj.gov

Dated: June 28, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2023 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification to all counsel of record.

s/*Douglas C. Salzenstein*
Douglas C. Salzenstein
Assistant United States Attorney
