UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **YOUSEF MOHAMMAD RAMADAN,** Defendant. | 2:17-CR-20595-TGB-EAS HON. TERRENCE G. BERG **ORDER DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (ECF NO. 352)** |

Before the Court is pro se Defendant Yousef Mohammad Ramadan's second motion requesting early termination of supervised release. ECF No. 352. The government filed a response in opposition, ECF No. 355, and Ramadan filed a reply. ECF No. 356. The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons stated below, the Court **DENIES** the motion.

### I. BACKGROUND

In August 2017, federal officers stopped Yousef Ramadan at the Detroit Metropolitan Airport and searched his luggage. They discovered weapons, armor, and various electronic devices. The devices contained ISIS propaganda, videos of a homemade pipe bomb, and photos of Ramadan posing with weapons. Ramadan told the officers that he owned

1

some firearms in a storage unit. Agents searched the unit a week later, uncovering firearms with obliterated serial numbers and a makeshift silencer. ECF No. 1.

In September 2021, a federal jury convicted Ramadan of three firearms charges, and on February 28, 2022, the Court sentenced him to time served and two years of supervised release. ECF Nos. 270, 299. A few weeks into his supervised release, Ramadan bought a pellet handgun from Amazon. Ramadan's parole officer told him that the gun violated the terms of his supervised release, and Ramadan returned it. ECF No. 341, PageID.5731–37.

Ramadan moved for early termination of his supervised release in June 2023, contending that he had complied with all the conditions of his supervision and that continued supervision limited his job prospects. ECF No. 319. The government opposed Ramadan's motion, ECF No. 320, and on August 24, 2023, the Court denied that motion, noting a number of incidents during his probation, including the purchase of the BB gun, a complaint that Ramadan stole a wallet from his roommate's relative, and negative interactions with a prior employer. ECF No. 322.

In October 2023, the FBI learned that Ramadan had bought another gun, a fully automatic AK-style air rifle. Officers searched his home and uncovered the air rifle as well as several phones and computers. Ramadan repeatedly refused to disclose the passwords for his electronic devices, and the officers eventually obtained access to them

2

however, and searched their contents. The devices contained encrypted text conversations with professed members of ISIS, manuals for building explosives, and a photo of Ramadan in an ISIS-style mask posing with the air rifle. ECF No. 341, PageID.5738–44; ECF No. 343, PageID.5892–94, 5904–10, 5923–25.

The Court determined that Ramadan's conduct violated the terms of his supervised release, and on February 28, 2024, the Court sentenced Ramadan to two months' in prison, with 34 months of supervised release to follow. ECF No. 337. Ramadan appealed his supervised release violation and sentence. ECF Nos. 338, 339. The Court of Appeals affirmed. ECF No. 350.

Ramadan now moves, a second time, for early termination of his supervised release. ECF No. 352. The government filed a response in opposition to Ramadan's motion, ECF No. 355, and Ramadan filed a reply in support of his motion. ECF No. 356.

## II. LEGAL STANDARD

A district court may, "after considering a subset of the sentencing factors set forth in [18 U.S.C.] § 3553(a), terminate a term of supervised release 'at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025) (quoting 18 U.S.C. § 3583(e)(1)). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make

3

clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* (quoting *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020)). The relevant § 3553(a) factors a court must consider are:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established from the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Tavarez*, 141 F.4th 750, 756 (6th Cir. 2025) (citing § 3583(e); § 3553(a)(1), (2)(B)–(D), (4)–(7)). Further, a district court may "consider whether a defendant exhibited 'exceptionally good behavior' when exercising its broad discretion to resolve motions for early termination of supervised release." *Hale*, 127 F.4th at 641.

### III. DISCUSSION

Ramadan claims that he is entitled to early termination of his supervised release because he has successfully completed more than 50% of his supervision term and complied with the terms of his release conditions, including reporting as required, passing employer drug and

4

alcohol tests, maintaining a stable residence, and holding a steady job. *Id.* He complains that being on probation makes it impossible for him to find other local employment besides work as long-haul trucker, which causes a hardship on him and his family because of his extended absences. *Id.* He contends that his supervision has achieved its purpose and is no longer necessary. *Id.*

While Ramadan's efforts in maintaining employment and apparent compliance with the conditions of his supervision are commendable and positive, "the test for securing an early termination of supervised release is strict." *United States v. Hart*, No. 3:21-CR-126, 2025 WL 3264518, at *2 (S.D. Ohio Nov. 24, 2025). "Full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. Laughton*, 658 F. Supp. 3d 540, 544 (E.D. Mich. 2023) (Ludington, J.) (citation omitted). "Similarly, productive employment, while laudable, does not justify the termination of supervision." *Id.* (citations and internal quotation marks omitted). "If 'unblemished' post[-]release conduct warranted termination of supervised release, then 'the exception would swallow the rule,' i.e., diligent service of the full period of supervised release imposed at sentencing." *Id.* (citing *United States v. Givens*, No. CR 5:14-074-DCR, 2022 WL 2820081, at *1 (E.D. Ky. July 19, 2022)) (quoting *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

Reviewing the record in this case in light of the relevant § 3583(a) factors, the Court finds that it would not be appropriate to grant Ramadan's request for an early termination of his supervised release, and that his conduct during supervised release, the nature of his previous violations, and the need to protect the public, all support the conclusion that he should serve the entire term of supervised release. *See United States v. Lowe*, 632 F.3d 996, 998 (7th Cir. 2011) (A district court need only "give some indication that it has considered the statutory factors in reviewing a motion for early termination of supervised release," rather than make explicit findings under those factors); *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003) ("[A] statement that [the district judge] has considered the statutory factors is sufficient.") (quotation marks omitted). To begin, the nature and circumstances of Ramadan's offenses here are extremely serious. Ramadan was convicted and sentenced on three firearms charges for possession of a firearm with an obliterated serial numbers, possession of a stolen firearm, and possession of an unregistered silencer. Once on supervised release, Ramadan purchased not one, but two BB guns, the second a Crosman AK fully automatic 4.5 mm air rifle, modeled to look like an AK-style assault rifle and without an orange tip. ECF No. 341, PageID.5731–44, 5761. And the FBI's report on Ramadan's communications devices showed that in March 2022—less than a month into his first term of supervised release—Ramadan started using the encrypted communication

6

application Telegram to access ISIS materials that included videos of violent acts. Ramadan communicated with users who appeared to be associated with ISIS, and he downloaded manuals that taught him how to build explosives, chemical agents, and poisons. ECF No. 343, PageID.5892–94, 5904–10, 5923–25.

Ramadan's past conduct demonstrates that the community as well as Ramadan benefits from his remaining under supervision, and the Court cannot trust his promised statements regarding his rehabilitation because he violated the terms of his supervised release in the past in egregious and dangerous ways. Considering the need to deter future criminal conduct and to protect the public, the Court finds that the conditions of supervised release imposed as part of Ramadan's sentence are appropriate to protect the community and to provide the necessary support and treatment he needs to ensure he does not return to criminal conduct. Supervision ensures that adequate safeguards remain in place. And Ramadan's contention that his conditions somehow require that he only accept employment as a long-haul trucker is not credible. The Court is aware from supervising others and communicating with the Probation Department generally, that Ramadan would be eligible to work in other fields, such as in manufacturing.

Accordingly, considering all the above, including the § 3553(a) analysis, the serious nature of Ramadan's crimes, and the need to deter criminal conduct, early termination would not be in the interest of justice,

7

and the nature and circumstances of the offense, coupled with Ramadan's history and characteristics, strongly support the conclusion that Ramadan's request for early termination should be denied. In sentencing Ramadan for the supervised release violation, the Court imposed a significant additional period of supervised release, rather than a lengthier custodial sentence, specifically because Ramadan needs to be supervised for as long as possible. Early termination is not appropriate.

## IV.  CONCLUSION

For the reasons stated above, Ramadan's motion for early termination of supervised release, ECF No. 352, is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: January 7, 2026        /s/Terrence G. Berg
                                                HON. TERRENCE G. BERG
                                                UNITED STATES DISTRICT JUDGE